[No. 12377.    In Bank. — May 6, 1889.]

# HENRY T. GAGE ET AL., APPELLANTS, *v.* JOHN G. DOWNEY ET AL., RESPONDENTS.

APPEAL — DISMISSAL — NOTICE OF MOTION FOR NEW TRIAL. — Motion to dismiss the appeal in this case because no notice of motion for new trial appeared in the record, denied upon the authority of *Pico* v. *Cohn*, 78 Cal. 384.

MORTGAGE — DECREE OF SALE — PRESUMPTION FROM LAPSE OF TIME. — In the absence of proof that property decreed to be sold upon foreclosure of a mortgage in 1856 was ever sold, it may be conclusively presumed, in an action of ejectment commenced in 1883, that the mortgage debt was paid, and that the property was never sold.

HUSBAND AND WIFE — ACTION FOR SEPARATE PROPERTY — JUDGMENT — RES ADJUDICATA. — A judgment in favor of a widow against the administrator and heirs of her deceased husband, establishing her right to certain land as having been acquired by her husband's investment of her separate funds, and compelling a conveyance to her of such land, conclusively determines that that land belonged to her as her separate estate, and that the estate of the husband had no title to it acquired from any other source; and a title acquired by the husband from another source cannot prevail as to any portion of the land included in the judgment.

ID. — PLEADING — DESCRIPTION OF LANDS — DERAIGNMENT OF TITLE. — Reference made in the complaint in an action to adjudge certain lands to be the separate property of the wife to a particular grant of land which was mortgaged to the husband for a loan of the wife's money, and under which the husband acquired title, and also to a homestead which was set off to the mortgagor, and mortgaged to the husband to secure said loan, and to the mortgagor's "right" to the property described, are mere matters of description to identify the land claimed by the wife, and should not be regarded as setting forth a particular deraignment of title as the sole ground of the action. Such action challenges the husband's title to the land described, derived from any source, and title from another source which would defeat the wife's claim must be presented in defense, or it is concluded by the judgment in her favor

CHANGE OF PLACE OF TRIAL — DISQUALIFICATION OF JUDGE — JURISDICTION — COLLATERAL ATTACK UPON JUDGMENT. — When a case is transferred because of the disqualification of the judge, the determination of what court is the nearest to which the transfer should be made under the statute is within the jurisdiction of the judge, and the selection of a county seat most readily accessible, though not the nearest in distance, whether erroneous or not, will not render the final judgment in the case void upon collateral attack.

HUSBAND AND WIFE — COMMUNITY PROPERTY — SUCCESSION. — Upon the death of the husband, one half of the community property goes to the wife, and one half to the surviving children.

EJECTMENT — DEFENSE — COMPENSATION OF ATTORNEYS — VALIDITY OF CONTRACT. — When the plaintiffs in an action of ejectment have agreed to convey part of it to their attorneys in compensation for services, it cannot be urged by the defendants as matter of defense that such contract is void.

STATUTE OF LIMITATIONS — ADVERSE POSSESSION — TENANCY IN COMMON — FINDINGS. — A finding of facts tending to prove adverse possession against the owners of an undivided interest, but which do not necessarily constitute it, is not a sufficient finding of adverse possession to sustain a defense of the statute of limitations.

ID. — PATENT — MEXICAN GRANT. — The statute of limitations does not begin to run against the holder of a patent confirming a Mexican grant until the patent is issued, and adverse possession prior to such patent is of no avail.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The record did not contain the notice of motion for new trial, nor did the statement embody or refer to the notice, and a motion to dismiss the appeal was made upon this ground. The findings as to adverse possession were as follows: "That the defendants and their grantors have at all times for more than sixteen years last past been in the actual, peaceable, open, and notorious possession of all of said property, claiming the same by absolute title in fee as against all and every of the plaintiffs, their grantors, and all the world, and for more than five years prior to the commencement of this action have paid all the taxes, state, county, and municipal, which have been levied and assessed upon such land; that the defendant John G. Downey held the actual possession thereof, and the defendant Merchants' Exchange Bank held the same as tenants in common with him, by agreement with him that he hold the same as tenant in common with said bank, and not as against them; that prior to and at the time the plaintiff Gage purchased the interest in said property and procured the deeds under which he claims title here, he had notice that the defendants were in the open, exclusive, and notorious

possession of all of said property, claiming to own all thereof as against the grantors of the said Gage and against all the world." The date of Gage's purchase is fixed by recital in the agreements set out in the findings as October 16, 1882. The complaint was filed July 26, 1883, but was amended October 26, 1885, to include the Portilla grant, and to bring in the Merchants' Exchange Bank as defendant. The findings showed an agreement between the plaintiffs and their attorneys, Glassell, Smith, and Patton, to convey to them two fifths of the land in controversy in consideration of their professional services in establishing title thereto, and also another agreement between the plaintiff Gage and said attorneys, whereby he agreed to sell them his interest derived through his wife, in consideration of one thousand dollars and the first agreement. The further facts are stated in the opinion of the court.

*Glassell, Smith & Patton,* and *Henry T. Gage,* for Appellants.

The Portilla grant was not in issue in the San Bernardino case, and the Moss league is expressly excluded from the description. Only the right, title, and interest of Warner and wife, the mortgagors in the property included in the mortgage, was involved. (*San Francisco* v. *Lawton,* 18 Cal. 465; 79 Am. Dec. 187.) The description in the decree must be construed with reference to that in the complaint. (*Sheperd* v. *McNeil,* 38 Cal. 72; *Gregory* v. *Nelson,* 41 Cal. 278; *Mondran* v. *Goux,* 51 Cal. 151.) The title of the heirs of Rains to the Portilla grant was not in issue in the Santa Clara case, and the judgment in that case could not operate to divest their title. (*Gregory* v. *Nelson,* 41 Cal. 278; *Mondran* v. *Goux,* 51 Cal. 151; Freeman on Judgments, secs. 118, 252, 256–258, 271, 273, 276; *Fulton* v. *Hanlow,* 20 Cal. 450; *Waterman* v. *Lawrence,* 19 Cal. 210; 79 Am. Dec. 212; 1 Greenl. Ev., secs. 528, 532.) The order of the judge, who was

disqualified, transferring that case to another than the nearest court, was *coram non judice* and void. (*People* v. *McGarvey*, 56 Cal. 327; *Livermore* v. *Brundage*, 64 Cal. 299.) The judgment was void, having been rendered without jurisdiction. (*Galpin* v. *Page*, 3 Saw. 93; 18 Wall. 350; *Belcher* v. *Chambers*, 53 Cal. 635; *Pennoyer* v. *Neff*, 97 U. S. 714.) There is no sufficient finding of adverse possession, as there is no finding of notice to the plaintiffs of hostile possession. (*Aguirre* v. *Alexander*, 58 Cal. 28, 29; *Miller* v. *Myers*, 46 Cal. 539; *Unger* v. *Mooney*, 63 Cal. 586; 49 Am. Rep. 100; *Fair* v. *Stevenot*, 29 Cal. 486; *Pico* v. *Gallardo*, 52 Cal. 206; *Soto* v. *Irvine*, 60 Cal. 436.)

*Levi Chase, Bicknell & White*, and *O'Brien & Morrison*, for Respondents.

The title was represented by the administrator, and the heirs are all bound by the San Bernardino decree, including unborn heirs. (Tyler on Infancy and Coverture, 227, 230; McPherson on Infancy, 567; *Knots* v. *Stearns*, 91 U. S. 640; Code Civ. Proc., sec. 1582; Freeman on Judgments, 163 a ; *Meeks* v.*Vassall*, 3 Saw. 408; *Cunningham* v. *Ashley*, 45 Cal. 485.) The adverse possession of defendants was sufficient to put plaintiffs on inquiry, and the means of notice constituted notice. (*Fair* v. *Stevenot*, 29 Cal. 486; *Smith* v. *Yale*, 31 Cal. 184; 89 Am. Dec. 167; *Pell* v. *McElroy*, 36 Cal. 273.) Under the amendment of the complaint October 26, 1885, the limitation as to the Portilla grant, and in favor of the bank as a new party, ran to that date. (*Jeffers* v. *Cook*, 58 Cal. 147; *Anderson* v. *Mayers*, 50 Cal. 525; *Atkinson* v. *Amador & Sac. C. Co.*, 53 Cal. 102; *Meeks* v. *S. P. R. R. Co.*, 61 Cal. 149.)

THORNTON, J. — The motion to dismiss the appeals herein is denied on the authority of *Pico* v. *Cohn*, 78 Cal. 384.)

The plaintiffs in this cause are Henry T. Gage and Cornelia Rains de Foley, and the defendants are John G. Downey and the Merchants' Exchange Bank of San Francisco.

The action is ejectment to recover possession of an undivided one half of a tract of land situate in San Diego County, known as the rancho Valle de San José, for which a patent was issued by the United States on the 10th of January, 1880, to Sylvestre de la Portilla, and also an undivided twelve twenty-fifths of a tract of land situate in the same county, known as the rancho Valle de San José, for which a patent was, on January 16, 1880, issued by the United States to J. J. Warner.

Judgment was rendered for the defendants. The plaintiffs moved for a new trial, which was denied. The latter prosecute the appeals herein from the judgment and order denying a new trial.

On the 16th of April, 1836, a grant was made to Sylvestre de la Portilla by N. Guitterrez, political chief, of the place called Valle de San José, containing four square leagues.

On the eighth day of June, 1840, a grant was made to José Antonio Pico by Juan B. Alvarado, governor of California, of the place called Agua Caliente, to the extent mentioned in the plan accompanying the *expediente.*

On the twenty-eighth day of November, 1841, a grant was made to J. J. Warner by Manuel Micheltorena, governor of California, of the place called Valle de San José, containing six square leagues, more or less.

The grants to Portilla and Warner were confirmed and patents were issued to them severally, as above set forth.

The grant to Pico was rejected.

On the 6th of November, 1858, Portilla conveyed all his interest in the rancho to one Vicente S. de Carillo.

Some time prior to 1856, say in 1854, J. J. Warner mortgaged his rancho Valley of San José to J. Mora

Moss. Suit was brought to foreclose this mortgage in the district court for San Diego County. In this action a homestead was set apart by the court to Warner and wife. This homestead tract is described in the decree. A tract of a league in extent was set apart and directed to be sold under the Moss mortgage.

This latter tract is described in the decree. It does not appear that the league was ever sold. This decree seems to have been entered in 1856. Surely, in the absence of proof, it may be conclusively presumed that Moss's debt was paid to Warner, and that this league was never sold.

The homestead set apart included the whole of Warner's ranch except the league above mentioned. This is manifest from the report of the commissioners, who set apart the homestead and the order of the court confirming it.

On the 20th of November, 1858, the above-named Warner and his wife, Anita Warner, executed a mortgage to John Rains of all their interest in the land granted to him.

The description of the land included in this mortgage is as follows:—

"All the right, title, and interest of the parties of the first part in and to that certain tract of land lying, being, and situate in the county of San Diego, California, known as the valley of San José and Agua Caliente, and being the lands granted to José Antonio Pico by Juan B. Alvarado, governor of the department of the Californias, by deed of grant of date of June 8, 1840, and to Juan J. Warner by Manuel Micheltorena, governor as aforesaid, by deed of grant of date of November 28, 1844, reference being had for a more particular description to the several grants, *expedientes*, maps, and other papers on file in the office of the surveyor-general of the United States for California, in the city of San Francisco, and in the office of the clerk of the district court of the United States for

the southern district of California, in the city of Los Angeles, forming the record of case No. 254 on the docket of the United States land commission, and of case No. 218 on the land docket of said district court; together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining."

On the 5th of July, 1861, the above-named Carillo conveyed to John Rains the undivided one half of the (Portilla) rancho, previously conveyed to him by Portilla.

The mortgage of Warner and wife to Rains was subsequently foreclosed, and the mortgaged premises sold under the decree of foreclosure by George Lyons, sheriff of the county of San Diego, to Rains; and on the 18th of November, 1861, the sheriff aforesaid, in pursuance of the decree and sale to Rains, executed to him a deed of the mortgaged premises above mentioned. The description in the sheriff's deed of the property conveyed is as follows:—

"All the right, title, and interest of said defendants of, in, and to that certain tract of land lying and being situate in the county of San Diego, state of California, known as the Valle de San José and Agua Caliente, and being the land granted to José Antonio Pico by Juan B. Alvarado, governor of department of the Californias, by deed of grant of date January 8, 1840, and to John J. Warner by Manuel Micheltorena, governor as aforesaid, by deed of grant of date November 28, 1844; reference being had for a more particular description to the several grants, *expedientes*, maps, and other papers on file in the office of the surveyor-general of the United States for California, in the city of San Francisco, and in the office of the clerk of the district court of the United States for the southern district of California, in the city of Los Angeles, forming the record of case No. 254 on the docket of the late United States land commission, and of case No. 218 on the land docket of said district court; together

with all and singular the tenements, hereditaments, and appurtenances thereunto belonging."

The mortgage of Warner and wife to Rains included the whole ranch granted to Warner, and Rains, under the decree of foreclosure, acquired title to the whole of it, and of this we have no doubt. The decree directs the whole to be sold and conveyed by the sheriff. The description in the mortgage and sheriff's deed are given above.

By the deed from Carillo and wife, he was invested with the title to the undivided one half of the Portilla ranch, and the legal title to Warner's ranch, and the above one half of the Portilla grant was in him when he died in November, 1862. These interests descended to his wife and children, unless the latter were divested of them by proceedings which will be hereafter referred to.

Before Rains took the mortgage above mentioned from Warner and wife, he had, on the 16th of September, 1856, intermarried with Maria Merced de Williams. He died on the 17th of November, 1862, leaving surviving him his wife above named and five children, named Cornelia (who is one of the plaintiffs), Isaac, Robert, John, and Francisca, the latter born after the death of her father. Isaac died in 1877 intestate, unmarried, and without issue.

On the 21st of February, 1863, Maria Merced, the above-named widow of John Rains, commenced an action in the district court of the county of San Bernardino against E. K. Dunlap, administrator of John Rains, deceased, and her children above named and others, in which she set forth her marriage with John Rains on the 16th of September, 1856; that Rains then had but an inconsiderable amount of property, which he afterward expended; that Rains acquired money by the sale of her separate property; that on the 29th of November, 1858, he lent to J. J. Warner the sum of eighteen hundred dollars, to secure the payment of which he re-

ceived from Warner and his wife a mortgage of certain property, describing it as follows: —

"All their right, title, and interest in and to that certain tract of land lying and being situate in the county of San Diego, California, know as the Valle de San José and Agua Caliente, and being the lands granted to José Antonio Pico by Juan B. Alvarado, governor of the department of the Californias, by deed of grant of June 8, 1840, and to John J. Warner by Manuel Micheltorena, governor as aforesaid, by deed of grant of date November 28, 1884."

The property and right included in said mortgage being all that part of said ranch Valle de San José and Agua Caliente lying to the north and east of the east and west and north and south lines drawn from the tree marked W, mentioned in the complaint, instead of the one square league lying to the south and west of said two lines.

The line referred to marked W is described as an oak, standing on the east and in contact with the rocks forming the first rocky point on the south side of the Meadow Valley, which extends eastwardly from the Rocky Hill at San José Indian Village to Buena Vista.

(The above description is combined from the original and amended complaint, in accordance with what appears in the transcript.) Other property is mentioned in the complaints which it is not necessary to describe.

The complaint further avers that Rains proceeded in due course of law to foreclose this mortgage against Warner and the heirs of his wife, then deceased; that at the sale under the decree of foreclosure Rains became the purchaser, and thereafter in due time received the sheriff's deed for such premises.

It was further averred that the money lent by Rains to Warner, and for which the mortgage was taken from Warner and wife, was the separate property of the then plaintiff, Maria M. Williams de Rains; that Rains paid no.

money for the property purchased at the sheriff's sale above mentioned, and that the amount paid was the amount found by the court due on the mortgage foreclosed; that no part of this money had even been given to Rains by the plaintiff, his then widow, or did it belong to him in any way; that she was informed by Rains that the sheriff's deed for the mortgaged property aforesaid had been executed to her as grantee. She avers that the property became her separate property, and asks that the court decree the property included in the aforesaid deed of the sheriff of San Diego County to be hers, as against the defendants, with the common general prayer for all other and further relief to which she may be entitled.

The district court for San Bernardino County found the facts as alleged by plaintiff in regard to this property, and decreed it to be her separate property.

And it was further adjudged by same decree that defendant E. K. Dunlap, administrator of John Rains, deceased, execute and deliver to the plaintiff all necessary deeds, etc., to carry the decree into full effect.

This decree was entered and filed on the 12th of March, 1863.

On the next day the deed of the property described in the complaint was executed to plaintiff Maria Merced, by the administrator, as required by the decree.

On the 14th of March, 1863, the above-named Maria Merced conveyed to her children, Cornelia, Isaac, Robert, John Scott, and Francisca Rains, by deed, all of the estate above mentioned, conveyed to her by deed of Dunlap, administrator, just above set forth.

On the 2d of April, 1864, the aforesaid Maria Merced, widow of John Rains, commenced an action in the district court for the county of Los Angeles against Dunlap in his individual capacity, and also as administrator of John Rains, deceased, Robert S. Carlisle, individually and as trustee, Cornelia Rains, Isaac Rains, Robert

Rains, John Scott Rains, Francisca V. Rains, and others, as defendants.

On the twenty-sixth day of November, 1864, on the affidavit of plaintiff's attorneys that the judge of the district court for the first judicial district, of which the county of Los Angeles formed a part, was disqualified from acting in the case by reason of consanguinity, on motion of said attorney the cause was removed for trial to the district court of the third judicial district of Santa Clara County. No objection was made to this order.

The papers in the cause were thereafter transmitted to the district court for the county last named, and filed therein on the 4th of January, 1865. No motion was made to remand this cause to the district court for Los Angeles County, and it remained for trial and was tried in the court to which it had been by the order transferred.

On the 9th of May, 1865, an amended complaint was filed by the plaintiff, who had, since the commencement of the action, intermarried with José C. Carillo.

The object of this suit was to have set aside the conveyance to her children, as having been procured from her by fraud and undue influence, and also to set aside a power of attorney executed to Robert S. Carlisle, which she had revoked, and for an account from Carlisle, etc., and for general relief.

The property averred to have been conveyed by the deed sought to be set aside by this suit is set forth in the complaint and is described in full. It consists: 1. Of the Cucamonga ranch, situate in the county of San Bernardino; 2. The Bella Union Hotel, situate in the city of Los Angeles; 3. A lot in the city just mentioned, which was conveyed to Rains by Alice Flashner by deed dated August 11, 1862; and 4. (We here insert the description in same words as in complaint) "All that certain tract of land situate in the county of San Diego, state aforesaid, known as the San José del

Valle and Agua Caliente, same set apart as a homestead for Jonathan J. Warner and wife by decree of the district court of San Diego County, on September 24, 1856, and known also as Warner's rancho"; 5. Certain personal property.

The above is alleged in the complaint to have been decreed to be her separate property by the decree in the San Bernardino action.

Dunlap, Carlisle, and the infant children of said plaintiff, by their guardian *ad litem*, all answered the complaint.

The case was tried, and on the twenty-seventh day of May, 1867, a decree was made and entered setting aside the deed above mentioned, made by plaintiff to her children, as having been obtained by fraud, and it was ordered that the same should be delivered up and canceled; also setting aside the power of attorney to Carlisle.

The decree then proceeds to distribute the property in the action between the plaintiff and her children, defendants above named. Certain property is distributed to the children, and adjudged to belong to them, and certain other property to the plaintiff as hers; the respective interests are clearly designated and described in the decree, and possession is awarded to each of the parcel so decreed to them.

Among other parcels of land awarded to the plaintiff is one designated in the decree in words following:—

"2. And also all that tract of land situate in the county of San Diego, state of California, and known as the Rancho San José del Valle (or Warner's ranch), being the same rancho finally confirmed to J. J. Warner, and surveyed under instructions from the United States surveyor-general of California by John C. Hayes, in July, 1859, and said survey was approved March 3, 1860, by T. W. Manderville, United States surveyor-general of California."

On the 3d of December, 1868, Maria Merced Williams

de Carillo executed to C. V. Howard, P. Beaudry, M. F. Coronel, J. G. Downey, and J. S. Garcia a deed of "all that certain tract of land or rancho situate in the county of San Diego, state of California, known by the name of San José del Valle, or Warner ranch, and also known by the name of San José o Tagui, and being the same tract of land or rancho confirmed by the United States land commission and United States district court to J. J. Warner, in the case of *J. J. Warner* v. *United States*, to the papers in which case reference is made for a more particular description."

It is admitted that defendants succeeded to an undivided half of the Portilla grant by deed of V. S. de Carillo, executed on the 20th of February, 1869, to C. V. Howard *et al.*, and is not involved in this suit.

Of the children of Maria M. W. de Rains, above mentioned, Isaac died in 1877, intestate, unmarried, and without issue. It is said by counsel for plaintiffs that the interests of Robert, John, and Francisca, who married the plaintiff Gage, if any they had, became vested before the beginning of this action in the plaintiff just above named.

Defendants claim title under the decrees above set forth, rendered in the San Bernardino and Santa Clara cases, and conveyances subsequently made.

It is averred by plaintiffs that the title under the Portilla grant was not embraced in the San Bernardino case.

In this contention we cannot concur as to that portion of the Portilla grant which conflicted with the grant to Warner. The claim preferred by Mrs. Rains in this suit was for the whole of the Warner ranch, except the Moss league, which league in the final survey was not awarded to Warner. The reference to the grant to Warner and the homestead set off to him in the action of *Moss* v. *Warner and Wife* was mere matter of description to identify the land which she claimed. There was no intention to do what is most unusual and

entirely unnecessary to deraign and set forth her chain of title in the complaint.

The complaint means that John Rains bought this land with money which was part of plaintiff's separate estate; that it belonged to her in fee, and should be conveyed to her. It states that the property included in the mortgage to John Rains is a certain part, viz., that set off as a homestead in the action of *Moss* v. *Warner*. That is the tract claimed by her in the action, and so declared in the complaint. The word "right" connected with "property" in the complaint does not give a different meaning to what is claimed by the complaint. The language used amounts to stating that the right involved and claimed here is the right to the tract set apart as a homestead described in the pleading.

The decree of the court and the deed of Dunlap, administrator, accord with this view, as will be seen by the reference to them.

The complaint intended to challenge John Rains's right and title to this land, and to bring them to judicature, and this we think was done by the pleader. So that the parties claiming under Rains might deny by their answer her right to the land, and offer in evidence any title, whether derived from Portilla or any one else, to the land which would show the land to be a part of his estate. The title to the land was in controversy in this suit as between the personal representative and the children of John Rains on the one hand, and his widow on the other, and it was determined in favor of the widow (plaintiff).

John Rains acquired his interest in the Portilla grant after his foreclosure at the sheriff's sale under the decree of foreclosure in the action to foreclose his mortgage taken from Warner and wife; and if after Mrs. Rains obtained the deed of the administrator under the decree in the San Bernardino case, she had brought an action against John Rains to recover the land embraced in the

decree, and he had set up against her his Portilla title, she might have defeated it, if not by the decree just above mentioned, by showing that the Portilla interest was acquired by him with money belonging to her as her separate estate.

In our judgment, the decree under consideration conclusively determined that the land embraced in it belonged to Mrs. Rains, and that the estate of Rains had no title to it acquired from any source,—whether Portilla or Pico, or any one else.

Under this decree in Mrs. Rains's favor she executed the deed to her children, under which plaintiffs herein claim.

It is contended on their part that the judgment in the case tried in Santa Clara, setting aside this deed, is void for want of jurisdiction in the district court of Santa Clara County. This contention we propose now to consider.

The objection made to the jurisdiction of the court is put on the ground that the judge had transferred the cause to the district court of a county, — Santa Clara, — which court was not the nearest court to Los Angeles County, where the like cause of objection for making the order did not exist.

The same cause and objection here existed as to every county in the first judicial district; therefore it would have been error to transfer it to a court in a county in that district. The judge then had to select a court of a county not of the first district.

The nearest district courts then were in the third judicial district, at that time composed of the counties of Monterey, Santa Cruz, Santa Clara, and Alameda.

Conceding that the county seats of Monterey and Santa Cruz were nearer to Los Angeles County in a straight course than that of Santa Clara County, still, as the county seat of the latter was nearer by the usually traveled route. or more accessible, might it not be reason-

ably concluded that the district court of Santa Clara was the nearest ?

But waiving this, we are of opinion that, conceding that the county seat of Monterey or Santa Cruz was nearer than that of Santa Clara to Los Angeles County, that the order sending it to the district court of the latter county was only error. We cannot see how it can be law that a judgment can be impeached collaterally and held void because a judge has made an inconsiderable mistake in computing distances, or had selected a county seat more readily accessible than the other in coming from Los Angeles, and holding it to be really the nearer on that account.

The judge had jurisdiction to make this order under the statute then in force. He must determine what is the nearest in administering the law. This determination was undoubtedly within his power (Stat. of May 9, 1854; Stats. 1864, p. 153; Hittell's General Laws, par. 5600); and if he sent it to a county some distance farther than another by error of a miscalculation of distances, it would be nothing more than an error, and should not render the judgment void. Conceding that this judgment might have been reversed on appeal, still it would not be void on collateral attack. The cases cited by the counsel for plaintiffs (appellants here) (*Burton* v. *Covarrubias*, decided at the April term, 1865 (not reported); *People* v. *De la Guerra*, 24 Cal. 73; *Livermore* v. *Brundage*, 64 Cal. 299; and *People* v. *McGarvey*, 56 Cal. 327) are not at all in point. They are all on appeal or direct attack; no collateral attack was attempted in either case, and in every case except *People* v. *McGarvey*, they were orders, not of transfer, but orders in the cause, involving judicial action of different kind than that of transfer, which the judge was expressly forbidden by statute from making.

*People* v. *McGarvey* related to a criminal case transferred under a state of facts not allowed by the statute relating to such cases,—a statute entirely different from

the act under which the judge proceeded in this case, as is apparent from the opinion in the case.

There was no appeal in the Santa Clara case. In fact, the adverse parties therein did not object to the order, did not move to vacate it, nor to remand the cause in the Santa Clara court, but acquiesced in the judgment.

We do not think the contention of the appellants is sustainable. The judgment is not open to attack for the reason urged by them.

The plaintiff in the case tried in Santa Clara County relied on the judgment recovered in the San Bernardino case, which, as we have seen, determined that the whole of the Warner ranch, except the Moss league, was hers, as against any title derived from any source or any one else, and the decree in the Santa Clara case set aside the deed to her children, and determined certain land to belong in fee to the plaintiff therein, Mrs. Carillo, formerly Rains.

It makes no difference that the decree assumed the form of a partition of the property involved in the cause between the plaintiff and her children. It set aside the deed for the children, and conceding that the decree in other respects was void, it was not void so far as it set aside this deed. The Warner ranch, except the Moss league, then remained in her under the San Bernardino decree, and the administrator's deed made in pursuance thereof.

We do not think that it is averred in the complaint in the Santa Clara cause that the judgment in the San Bernardino cause was obtained and entered by collusion of any kind. The arrangement between Scott and Dunlap had relation to the deed executed after the judgment in the San Bernardino case to Mrs. Rains's children and the power of attorney to Carlisle, and not to the judgment.

The findings in the Santa Clara case, if there were any, are not in the transcript, and the judgment therein makes no reference to any agreement between Scott and

Dunlap. The point that this was averred to have been a collusive judgment is not well taken.

The defendants acquired, before the commencement of the action, the title to an undivided one half of the land patented to Portilla. This does not include the half conveyed to John Rains by Carillo and wife by deed dated July 5, 1861. The above appears by stipulation.

It was admitted on the trial that there is a league (the Moss league) of the land patented to Portilla which is not included in the patent to Warner. Such is the meaning of the stipulation on page 362 of the transcript.

All the land set apart as a homestead to Warner and wife with other land is included in the patent to Warner.

As to the land included in the Warner patent, the defendants are entitled to recover it. This follows from what has been stated above

The question as to that part of the land sued for outside of the patent to Warner, and embraced in the Portilla patent, demands further consideration.

The Moss league, it is admitted by stipulation, is not included in the patent to Warner.

The defendants acquired one half of the land granted and afterward patented to Portilla. The other half belonged to John Rains. He died intestate. This half was acquired during the coverture with his wife, Maria Merced, was therefore community property, and on his death passed, subject to the payment of the debts of the community property, one half to Maria Merced, his relict, and the other half to his children. Rains left five children, above named, one of whom, Isaac, died in 1877, then under age, intestate, unmarried, and without issue. Isaac's portion, inherited from his father, passed under the statute share and share alike to his brothers and sisters. The title to one fourth of the land embraced in the Portilla patent thus vested in the surviving children

of John Rains. This one fourth passed to the plaintiffs prior to the commencement of this suit, and they are entitled to recover it.

Conceding that the contracts between Glassel, Smith, and Patton and the plaintiffs (which are found by the court) are void, they are of no material significance in this action. If they were void, they can have and do have no effect on the title of plaintiffs. The plaintiffs may set them up against Glassel, Smith, and Patton, if they should so elect when the former make any claim against them. We cannot see that defendants' rights are in any way enlarged by these contracts. If such contracts are void, they are no more than so much blank paper between the parties. They take away nothing from the plaintiffs and add nothing to the rights of defendants. The contention of defendants on this point need not be further considered. It is dismissed from further notice as untenable.

For the foregoing views, the judgment and order are erroneous as to the one fourth of the land included in the Portilla patent. They are therefore reversed, and the cause remanded for a new trial as to the one-fourth interest above mentioned.

So ordered.

McFARLAND, J., SHARPSTEIN, J., and PATERSON, J., concurred.

A petition for a rehearing having been filed, the following opinion was rendered thereon on the 5th of June, 1889:—

BEATTY, C. J.—The rehearing is denied.

The sentence "all the land set apart as a homestead to Warner and wife, with other land, is included in the patent to Warner," is stricken from the opinion.

As to the defense of the statute of limitations, which, it is claimed, is found in favor of defendants, in our

opinion no adverse possession is found by the court in the finding referred to. The case in this respect is similar to *Packard* v. *Johnson,* 57 Cal. 182, where it was held that adverse possession was not found, the court remarking as to the finding that "while the facts found *tended to prove* adverse possession, yet the facts did not necessarily constitute adverse possession."

It will be observed that the action was commenced against all the defendants, except the Merchants' Exchange Bank of San Francisco, within five years after the patent was issued, and so was in time. The statute of limitations did not then run against such defendants. As to the bank, as stated above, there is no finding of adverse possession by it.