[No. 14411. In Bank. — March 31, 1892.]

## HENRY T. GAGE ET AL., APPELLANTS, *v.* JOHN G. DOWNEY ET AL., RESPONDENTS.

APPEAL — DECISION — LAW OF THE CASE — INCONSISTENT PRINCIPLES: — Where the decision of the supreme court upon a former appeal by inadvertence determines two principles of law standing in such opposition to each other as to be incapable of a harmonious construction, effect can be given to neither upon a subsequent appeal, and as to such matter the law of the case is not established.

ID. — NEW TRIAL — LIMITS OF INQUIRY. — When, upon a former appeal, the rights of the parties to be investigated upon a new trial were limited to a single question, the determination of the trial court upon that question will be the only proper subject of review upon a second appeal.

EJECTMENT — STRENGTH OF PLAINTIFF'S TITLE — TITLE OF DEFENDANT. — The plaintiff in ejectment must recover upon the strength of his own title, and the presence or absence of title in defendants is not material.

ID. — FORMER ADJUDICATION — SEPARATE PROPERTY OF WIFE. — Where the title to land in controversy in an action of ejectment was in controversy in a former suit, as between the personal representative and the children of a decedent on the one hand, and the surviving widow on the other, who sought to have it determined that the land was her separate property, and such suit was determined in favor of the widow, the plaintiffs in ejectment can take no rights under the children of the decedent in respect to such land.

PROBATE SALE — LIMITATION OF ACTION — CONSTRUCTION OF STATUTE. — Where no title vests under a probate sale, and no possession is taken by the purchaser under his purchase, the limitation of three years, prescribed by section 1573 of the Code of Civil Procedure, which is purely a statute of repose, does not affect the question of title, or confer title upon the purchaser, but the title still remains in the heirs and their grantees.

XCIV. CAL.—:6

ADVERSE POSSESSION — CO-TENANCY. — One co-tenant out of actual posses-
sion cannot rely for adverse possession as against another co-tenant out
of possession upon the possession of a third co-tenant.

ID. — CONSTRUCTIVE NOTICE OF OUSTER — INSUFFICIENCY OF EVIDENCE. —
Where the notice to a co-tenant out of possession by a co-tenant in
possession to support an ouster is purely constructive, the evidence of
such notice must be entirely convincing; and where there is nothing in
the evidence to indicate notice of the existence of an intent to claim
adverse possession, a finding of adverse possession cannot be sustained.

APPEAL from a judgment of the Superior Court of
San Diego County, and from an order denying a new
trial.

The facts are stated in the opinion of the court, and in
the opinion reported in 79 Cal. 140.

*Henry T. Gage, Glassell, Smith & Patton,* and *Smith,
Winder & Smith,* for Appellants.

*Bicknell & White, O'Brien & Morrison,* and *Levi Chase,*
for Respondents.

GAROUTTE, J. — This is an action of ejectment.
Judgment went for the defendants, and this appeal is
prosecuted from such judgment and the order denying
plaintiffs' motion for a new trial.

The facts of the case are set forth in detail in *Gage
v. Downey,* 79 Cal. 140, when the cause was previously
before this court, and it will not be necessary to recite
them here.   The decision of the court at that time set-
tled the rights of the parties to a large portion of the
lands involved in this litigation, and then remanded
the cause for a new trial as to a one-fourth interest of
the land included in the Portilla patent, such one fourth
being the interest claimed by plaintiffs as having passed
to the children of John Rains at the time of his decease,
by virtue of being community property, and he dying
intestate.   At the subsequent trial of this cause in the
lower court, that court very properly confined itself to
an examination of the single question presented to it
for investigation; and the only matter which will oc-

cupy our attention here will be as to the correctness of the determination of that question.

It is very much to be regretted that the former decision of this case by this court (*Gage* v. *Downey,* 79 Cal. 140) is not more explicit and more satisfactory as to some matters there considered and determined.

At the first trial it was stipulated (and the stipulation is in the present record) that the Moss league was afterward embraced in the Portilla patent, and that " all the balance of the land included in the Portilla grant was set off to Warner as a homestead, together with the land included in the patent of the United States to J. J. Warner." It will thus be seen that under this stipulation we have all the land included in the Warner patent and all the land included in the Portilla patent, except the Moss league, set apart to Warner as a homestead.

At the time of the death of John Rains the title to the Warner grant stood in his name. Subsequent thereto, the widow, Mrs. Rains, brought an action in San Bernardino County against the administrator of the estate and the children, claiming said land as her separate property.

This court, in its previous opinion, construing the complaint in that case, said: " The language used amounts to stating that the right involved and claimed here is the right to the tract set apart as a homestead described in the pleadings "; and again: " The title to the land was in controversy as between the personal representative and the children of John Rains on the one hand, and his widow on the other, and it was determined in favor of the widow." The question as to the effect of the San Bernardino decree is further considered at length by the court, but we have sufficiently noticed it for present purposes. We then have the stipulation of counsel that the Warner homestead included all the land embraced in both patents save the Moss league; and we have the decision of this court that all the land included in the Warner homestead was adjudged to be the separate property of Mrs. Rains (the widow) by the San Bernardino decree, which would only leave the title to

the Moss league standing in the heirs of John Rains. In a subsequent portion of the opinion of the court, this language is used: " The defendants acquired one half of the land granted and afterward patented to Portilla. The other half belonged to John Rains. He died intestate. This half was acquired during coverture, . . . . and therefore community property. . . . . The title to one fourth of the land embraced in the Portilla patent thus vested in the surviving children of John Rains." This conclusion is absolutely inconsistent with the decision of the court in a former part of the opinion, wherein it is determined that the San Bernardino decree gave Mrs. Rains good title to all of the property covered by the Warner homestead, to wit, all of the Warner grant and all of the Portilla grant except the Moss league. If Mrs. Rains had title to the Portilla grant except the Moss league, then the surviving children of John Rains, deceased, could not have had title to one fourth of the Portilla grant. Counsel representing both sides of the case, very properly in the interest of their respective clients, now claim the law of the case upon this question to be established in their favor. We can only say, that where a decision of the court by inadvertence determines two principles of law standing in such opposition to each other as to be incapable of an harmonious construction, effect can be given to neither, and as to such matter the law of the case has not been established.

As already suggested, the lower court having explicitly followed the directions of this court given upon the previous appeal, and having thereby limited the investigation at the last trial to the *status* of the one-fourth interest in the Portilla grant claimed to have passed to the children of John Rains at his decease, it would seem that its determination as to such matter could properly be the only subject for review upon this appeal. Such being the fact, whatever interest the plaintiff Cornelia De Foley now claims by virtue of her deed from her mother, Mrs. Rains Carillo, dated June 6, 1883, is a matter entirely immaterial at this time, for it involves an

interest in the Portilla grant outside of the limits placed for this investigation.

Again, counsel have at great length devoted themselves in their argument to the proper construction of the deed from Mrs. Rains Carillo to defendants' grantors, which deed is dated December 3, 1868. We think the matter of minor importance, the investigation being limited, as already suggested. If the consideration of plaintiff Foley's title under the deed from her mother was the matter at issue, then the construction of this deed from Mrs. Carillo Rains to defendants' grantors would be very material, as showing that at the date of the Foley deed Mrs. Carillo Rains had no interest in the land, having previously parted with it under her deed as aforesaid, but that question is not before us. Plaintiffs must recover upon the strength of their own title, and the presence or absence of title in defendants is not material, and whatever interest the plaintiffs have here is such interest as was not cut off by but survived the San Bernardino decree. We are entirely satisfied with the previous decision of this court as to the effect of the Santa Clara judgment, to wit, that it resulted only in setting aside certain deeds, etc., and thereby placing Mrs. Rains Carillo in the same position she found herself immediately subsequent to the date of the San Bernardino decree, and the deed made by the administrator thereunder. Consequently these plaintiffs now have all the interests of the children of John Rains, deceased (unless since lost by operation of law), to this one fourth of the land included in the Portilla patent, unless the San Bernardino decree adjudicated it against them. If the plaintiff's interests survived that decree, Mrs. Rains Carillo's deed to defendants' grantors did not carry it. It would seem, therefore, the effect and scope of this decree is a matter of great importance to a proper solution of the merits of the pending appeal.

Whatever rights the plaintiffs have in this land came to them as heirs at law of John Rains; for whatever interest he may have had in this property at the time of

his death, it having accrued to him by purchase during coverture, and he having died intestate, one half thereof would pass to the surviving children. It is now conceded that under the San Bernardino decree the plaintiffs have no rights by virtue of the Warner patent. Whatever interest the widow Rains or the Rains estate had in the Portilla grant came by way of a deed from Vicente Carillo (who owned the grant at the time) to John Rains for an undivided one-half interest thereof. We will then proceed to an examination of that decree to ascertain what portion, if any, of the Portilla grant was there adjudicated to be the separate property of Mrs. Rains, the widow.

That was an action brought by Mrs. Rains against Dunlap, the administrator of the estate of John Rains, deceased, and the children of John Rains, for the purpose of obtaining a decree that certain property claimed by Dunlap as administrator of said estate was her separate property. The complaint alleged that on the 29th of November, 1858, John Rains loaned to Jonathan J. Warner the sum of eighteen hundred dollars, and as a security took a mortgage from Warner and wife to that certain tract of land situated in the county of San Diego, California, known as the Valle de San José and Agua Caliente, and being the lands granted to José Antonio Pico by Juan B. Alvarado, governor of the department of the Californias, by deed of grant of June 8, 1840, and to John J. Warner, by Manuel Micheltorena, governor as aforesaid, by deed of grant of date November 28, 1844, the property and right included in said mortgage being the land set off and partitioned as a homestead by commissioners for that purpose in the case of *J. Mora Moss* v. *Jonathan J. Warner and Anita Gale Warner.* The complaint further alleged that said money loaned was her separate property, that said mortgage was foreclosed, and said Rains bought the property at sheriff's sale for the amount of the judgment, and received the deed therefor in his own name. After trial the court rendered the following judgment: —

" And it is ordered, adjudged, and decreed that all right, title, and interest, claim and demand whatsoever, which the said John Rains had and held at the time of his death of, in, and to a certain tract of land situate in the county of San Diego, state of California, known as Warner's ranch, and hereinafter described, do rest and vest in the plaintiff, Maria Merced Williams de Rains, as her separate and undivided property, free of all claim and demand and encumbrances whatsoever created by her said husband, John Rains, in said tract of land, being the same set apart as a homestead for said Jonathan J. Warner and wife by commissioners appointed for such purpose by the district court of the first judicial district of the state of California for San Diego County in the case of *J. Mora Moss* v. *J. J. Warner et al.*, which partition by said commissioners was filed in said court and approved and confirmed on September 24, 1856, and being the same lands included in the deed of the sheriff of San Diego County to John Rains of date September 8, 1861, recorded in the county recorder's office of San Diego County on September 12, 1861, at ten o'clock, A. M., and said lands being all that part of the Rancho de Valle de San José and Agua Caliente granted to José Antonio Pico by Juan B. Alvarado, governor of the department of the Californias, by grant of January 8, 1840, and to the said Warner, by the said name of Juan J. Warner, by Manuel Micheltorena, governor as aforesaid, by grant of date November 28, 1844, which lies to the north and east of," etc., the portion not included being the Moss league. In accordance with the terms of this decree, the land described as and adjudged to be the separate property of Mrs. Rains consisted of Warner's ranch, and more definitely described as,—
1. Being the same land set apart to Warner and wife as a homestead; 2. Being the same land included in the deed from the sheriff under the foreclosure sale to Rains; 3. Being the Rancho de Valle de San José and Agua Caliente grant to Pico by Governor Alvarado, January 8, 1840, and to Warner by Governor Manuel Micheltorena

by grant of November 28, 1844 (excepting therefrom
the Moss league).  This decree of the San Bernardino
court was entered March 12, 1863.

There can be no question as to the extent of the land
included in the Warner homestead, for it is a stipulated
fact in the case that the Warner homestead embraced
all the land included in both the Warner and Portilla
patents except the Moss league.  Consequently, to the
extent of the homestead description found in the decree,
we know exactly what land was there vested in the
widow.

The description of the land included in the deed from
the sheriff to Rains consists of " that certain tract of
land known as the Valle de San José and Agua Caliente,
and being the land granted to José Antonio Pico by
Juan J. Alvarado, governor of the department of the
Californias, by deed of grant of date January 8, 1840,
and to John J. Warner by Manuel Micheltorena, gov-
ernor aforesaid, by deed of grant of date November 28,
1844."  It will be observed that the description of the
land in the sheriff's deed is the same as the third de-
scription set out in the decree, except that in addition it
includes the land covered by the Moss league.  The Agua
Caliente described the land granted to Pico January 8,
1840, and appears to have comprised the northern por-
tion of the Valle de San José.  The expediente for-
warded to Governor-General Micheltorena by Warner
contained his application for the place known by name
as " Valle de San José," "surrounded by the mountain,
and which is vacant."  Upon November 28, 1844, said
Micheltorena, by his order, recited: " Whereas Juan José
Warner, Mexican by naturalization, has petitioned for
his own personal benefit and that of his family the land
known by the name Valle de San José, bounded on
the east by the entrance into San Felipe and the moun-
tain, on the west by the mountain and cañon Aguanga,
and on the north bounded by the mountain, and the
boundaries on the south being the Carrizo and the moun-
tain, . . . . I have resolved to grant him the said land,

declaring it by these presents his property." It will thus be seen that the grant to Warner referred to in the decree known as the place Valle de San José covered the entire valley, for it is bounded at all points of the compass by the mountain, and it also necessarily covers the Agua Caliente or Pico grant. The remaining description of the land covered by the decree is the place known as Warner's ranch, and the decree itself in terms declares what land is included in the description " Warner's ranch." It also appears as early as 1856, by the report of the commissioners appointed to set apart the Warner homestead, that the Valle San José was known as Warner ranch. The oral evidence tends strongly to the same point. The admissions of Mrs. Rains Carillo in her pleadings in subsequent litigation clearly indicates that she so considered it, and in truth, at the date of the decree in 1863, there was no tract of land other than the Valle de San José or the Warner homestead (which was the same tract, less the Moss league) to which the description " Warner's ranch " could apply.

We conclude that the evidence is entirely convincing that " Warner's ranch " and the "Valle de San José " refer to the same tract of land, which tract comprises the Moss league and the Warner homestead, and which therefore include all the land embraced within the Warner and Portilla patents, and that the San Bernardino decree included all the land covered by the Warner homestead. We leave this branch of the case by quoting with approval from the opinion of Mr. Justice Thornton upon the previous appeal (79 Cal. 153): " The complaint [referring to the San Bernardino case] intended to challenge John Rains's right and title to this land, and to bring them to judicature, and this we think was done by the pleader, so that the parties claiming under Rains might deny by their answer her right to the land, and offer in evidence any title, whether derived from Portilla or any one else, to the land, which would show the land to be a part of his estate. The title to the land was in controversy in this suit, as between the per-

sonal representative and the children of John Rains on the one hand and his widow on the other, and it was determined in favor of the widow (plaintiff). John Rains acquired his interest in the Portilla grant after his foreclosure at the sheriff's sale under the decree of foreclosure in the action to foreclose his mortgage taken from Warner and wife; and if, after Mrs. Rains obtained the deed of the administrator under the decree of the San Bernardino case, she had brought an action against John Rains to recover the land embraced in the decree, and he had set up against her his Portilla title, she might have defeated it, if not by the decree just above mentioned, by showing that the Portilla interest was acquired by him with money belonging to her as her separate estate. In our judgment, the decree under consideration conclusively determined that the land embraced in it belonged to Mrs. Rains, and that the estate of Rains had no title to it acquired from any source, — whether Portilla or Pico, or any one else."

It is a stipulated fact that defendants have title to the undivided one half of the land included in the Portilla patent, and therefore defendants would have title to an undivided one half of the Moss league. The remaining one half of the Moss league, being in Rains at the time of his death, descended to his heirs as follows: One half thereof, or twenty-five one hundredths of the entire league, to Mrs. Rains. There were five children. Isaac died a minor, intestate and without issue, pending administration, and his interest passed to the brothers and sisters in equal shares. (*Estate of Donahue*, 36 Cal. 329.) This would vest twenty-five one hundredths in the four children, which interest is now represented by the plaintiffs here.

Section 1573 of the Code of Civil Procedure provides: "No action for the recovery of any estate sold by an executor or administrator, under the provisions of this chapter, can be maintained by any heir or other person claiming under the decedent, unless it be commenced within three years next after the settlement of the final account

of the executor or administrator." During the progress of the administration of the Rains estate, the administrator, under order of the court, sold to one Carlisle the interest of the estate in and to the Portilla grant. The defendants insist that by virtue of the foregoing section, the Rains heirs having failed to bring any action against Carlisle or his grantees for the recovery of this land, and the time for bringing such action having long since expired, the title thereto vested absolutely in Carlisle, and therefore there is an outstanding title which is sufficient to defeat plaintiffs in ejectment. The fact that this probate sale was not merely irregular, but entirely void, appears to be immaterial. (*Harlan* v. *Peck*, 33 Cal. 515; 91 Am. Dec. 653; *Ganahl* v. *Soher*, 68 Cal. 97.) It appears that Carlisle never entered into possession of this land under his purchase, and to hold that under the circumstances as here depicted the interest of the heirs was transferred to Carlisle would be novel in the extreme; but we do not deem it necessary to discuss that question. Here it is conceded that no title vested in Carlisle under the probate sale, and that the facts exist which, under this section of the code, deprive plaintiffs of the right to bring an action for the recovery of the land. These are the only salient existing facts, and they do not establish title in any one. The provision of the code does not purport to affect the question of title to the realty, but simply refers to a right of action. It is purely a statute of repose. Defendants, in order to defeat plaintiffs' right of recovery, could no more rely upon this defense than they could upon the defense of title in John Doe by an adverse possession for the statutory time. The *right* to bring this action is entirely distinct from any question of Carlisle's title. This section of the code creates a statute of limitations, — a personal privilege, — and if the Rains heirs should bring an action to recover the land, *non constat* that Carlisle would take advantage of the plea afforded by the statute. It appears that Carlisle never took possession of the land under his deed. Perchance he recognized the fact that he obtained no

title thereunder, and makes no claim to title. If such be the fact, an action by the heirs was not demanded, and the title is still in them and their grantees. We conclude, therefore, that the facts relied upon in this regard do not constitute any defense to plaintiffs' cause of action.

The Portilla patent is dated January 10, 1880; the defendant the Merchants' Exchange Bank was made a party to the action by an amended complaint filed October 20, 1885, more than five years subsequent to the issuance of the patent, and the trial court found that, as to the defendant bank, the plaintiff Foley was barred from any right of recovery, by reason of an adverse possession of five years. The defendants sued in the original complaint were John G. Downey, and John Doe, Richard Roe, etc., fictitious defendants. Almost two years after the filing of the complaint, a summons was served on the Merchants' Exchange Bank. Subsequently the service of this summons, upon motion of the bank, was quashed, and the complaint was then amended by substituting said bank as defendant in lieu of John Doe, Richard Roe, etc. Some five years later, plaintiffs moved to set aside the original order quashing the summons. It is unnecessary to pass upon these proceedings in detail; it is sufficient to say we believe the original action of the court in quashing the service of summons justified, and are satisfied that the said bank was not a party to the action until October 20, 1885. Conceding these facts, the evidence is insufficient to support the finding of adverse possession. At the time the defendant bank obtained an interest in this land from the grantees of Downey, the plaintiff Foley was a co-tenant of Downey, and subsequently she became a co-tenant of the bank. The bank was never in the actual possession of the land, and for its adverse possession relies upon the possession of its co-tenant Downey; but this claim would be equally open to plaintiff Foley. There is no evidence that Downey was acting for the bank in his claim of adverse possession, and especially no evidence that plaintiff

Foley knew that Downey was claiming an adverse possession for the bank as against her. It is not clear that one co-tenant in possession can create a title by adverse possession for himself and a second co-tenant out of possession as against a third co-tenant. In *Miller* v. *Myles*, 46 Cal. 539, the court said: "The tenant out of possession has a right to assume that the possession of his co-tenant is his possession until informed to the contrary, either by express notice, or by acts and declarations which may possibly be equivalent to notice under certain circumstances. But until he has notice, either actual or constructive, in some form, that the possession of his co-tenant has become hostile, it will be deemed in law to have been amicable, notwithstanding the tenant in possession may in fact have been holding adversely." (See *Packard* v. *Johnson*, 57 Cal. 182; *Aguirre* v. *Alexander*, 58 Cal. 28.) The notice to plaintiff in this case to support the ouster is purely constructive, and to support such character of notice the evidence must be entirely convincing. In *Winterburn* v. *Chambers*, 91 Cal. 180, the court, in discussing this question, said: "It is the *intent* which determines the character of the possession; but it is essential that this intent be in some mode, either by actual or presumptive notice, directly or indirectly communicated to the other co-tenant. This intent is not the secret purpose of the occupant, but is the purpose which the acts themselves manifest, and the acts done must be manifested to the person against whom the ouster is directed." While the evidence here may have been sufficient to support a finding of adverse possession in favor of defendant Downey, there is nothing to be found in the record to indicate that Downey's "intent" extended beyond his own interest in the land, or that plaintiff Foley had any notice of the existence of such an intent in the mind of Downey, even if he were possessed of it. We think the findings of the court upon the question of the statute of limitations arising under the probate sale to Carlisle, and under the claim of adverse possession by the de-

fendant Merchants' Exchange Bank, are not supported by the evidence.

The judgment and order are affirmed as to the land embraced in the said one fourth of the Portilla patent, except as to the twenty-five one hundredths of the Moss league, and as to said interest the judgment and order are reversed, and the cause remanded for a new trial.

Harrison, J., McFarland, J., Sharpstein, J., and Paterson, J., concurred.

Rehearing denied.