[No. 6403.]

## THE SEATON MOUNTAIN ELECTRIC LIGHT, HEAT AND POWER COMPANY ET AL. v. THE IDAHO SPRINGS INVESTMENT COMPANY ET AL.

**1. Public Service Corporations—Rules and Regulations—** Public service corporations may prescribe regulations for the conduct of their business; but these must be just and reasonable, and not capricious, arbitrary, oppressive, or discriminatory.— (126)

Such a corporation, occupying the streets with its appliances, and supplying both electric light and steam heat to the inhabitants of a city, may not prescribe by rule that only those who purchase from it the electric current for lighting their dwellings shall be served with steam heat, even though the production of the electric current is the principal business of the corporation, and it uses for heating purposes only the steam exhausted in the production of electricity, and if compelled to furnish steam heat to those not purchasing the electric current, its business will be unprofitable.—(126-129)

**2. Pleadings—Judgment on the Pleadings—**Where the defendant's answer presents no defense to the case made by the complaint, or presenting an affirmative defense which is controverted by the plaintiff, the defendant offers no evidence, judgment goes for the plaintiff as of right.—(129, 130)

**3. Mandamus—Injunction—**A citizen desiring the service of a public service corporation to which he is entitled but is not receiving, may apply by mandamus.—(131)

Where the service is being furnished, but unreasonable conditions are prescribed for its continuance, an injunction is the proper remedy.—(131)

**4. Champerty—When a Defense—**Champerty can be asserted only when the champertous agreement is itself sought to be enforced.—(131)

*Error to Clear Creek County District Court —* Hon. H. ASHBAUGH, Judge.

Mr. E. M. SABIN for plaintiffs in error.

Mr. A. D. BULLIS and Mr. F. L. COLLOM for defendants in error.

The material facts necessary to consider in determining the questions presented are, substantially,

as follows: The Seaton Mountain Electric Light, Heat and Power Company is a corporation organized for the purpose of manufacturing and selling electric light, heat and power to the residents and inhabitants of the city of Idaho Springs, and has secured from the latter franchises authorizing it to carry on that business within the limits of the municipality. Pursuant to the authority thus obtained, the company installed pipes and other appliances in, through, and under the streets, avenues and alleys of the city for the purpose of supplying heat by means of steam. The parties named as defendants in error, at their own cost and expense, installed or caused to be installed in buildings which they owned or occupied, pipes, radiators and other steam-heating fixtures and appliances, and by and with the consent of the Seaton Company, connected such appliances with the pipelines of the Seaton Company, and the latter, for several years, has been supplying steam to the defendants in error, for heating purposes, which was utilized through these appliances. During this period these parties were obtaining electric current to light their respective buildings from another electric light company and its successor. The Gem Leasing Company was carrying on the business of supplying steam which the Seaton Company had contracted to furnish, under some arrangement with the latter company. In August, 1907, the Gem Company caused to be served upon the defendants in error a notice to the effect that steam would not be supplied for heating purposes to any party or parties whomsoever, unless they should at the same time use electric current supplied by the Seaton Company for lighting the premises in which steam obtained from that company was used for heating, and that on and after October first following,

steam would not be supplied for heating purposes, except under such conditions. Shortly after the service of this notice, the defendants in error, as plaintiffs, brought suit, the purpose of which was to enjoin the plaintiffs in error, as defendants, from enforcing the condition stated in their notice, the averments of fact in their complaint being substantially as above stated.

The answer of the defendants, so far as material, and which we shall designate their first defense, was as follows:

It admitted that notice had been given, to the effect that steam for heating purposes would not be supplied the plaintiffs after the first of October, 1907, unless they used electric current supplied or furnished by the Seaton Company to light their buildings heated by such steam, and averred that it was their purpose to shut off from plaintiffs, and refuse to supply them with, steam, on and after that date, unless the conditions of such notice were complied with. For further and separate answer, which we shall call the second defense, they alleged that the principal product of the Seaton Company was electric current for light; that in manufacturing such current during certain portions of the year, steam was employed, and that the exhaust steam was used in supplying heat; that this exhaust was limited in its amount; and that the heat supplied from this source was not more than sufficient to supply patrons of the company who purchased from it current for lighting purposes; and that if they, the defendants, were required to furnish heat to others than its patrons taking light, it would be compelled to generate live steam, which would increase the expense of operating its plant. For further and separate answer, and as their last defense, they alleged that the

suit was not being prosecuted by plaintiffs in good faith, for the reason that they had entered into an agreement with the United Hydro Electric Company, a competitor of the Seaton Company, whereby the Hydro Company had agreed to pay all expenses incurred by plaintiffs in the prosecution of their action, and that the Hydro Company had entered into the above arrangement with the plaintiffs to start litigation in order to harass and annoy the defendants, and for the purpose of gaining an unfair advantage over its competitor, the Seaton Company.

Thereafter the cause came on for hearing on the application of plaintiffs for a preliminary injunction, which was granted, restraining and enjoining the defendants from shutting off from plaintiffs, steam heat, and directing that they continue to supply such heat to plaintiffs until the further order of the court.

Afterwards the plaintiffs demurred to the last defense, and the one preceding, which we have designated the second. The demurrer as to the latter was overruled, and sustained as to the former. Plaintiffs then filed a replication, the purpose of which was to put in issue averments and allegations of the second defense. In this state of the pleadings the case came on for final hearing before the court. Plaintiffs stated that they did not desire to offer any evidence, but rested their case on the pleadings. Thereupon the defendants moved to dissolve the preliminary injunction and dismiss the case, which motion was overruled, when the defendants informed the court that they did not desire to offer any evidence, whereupon judgment was rendered in favor of plaintiffs, to the effect that the preliminary injunction be made permanent. The defendants have brought the case here for review on error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

*Quasi*-public corporations are required to serve the inhabitants of the territory in which they operate, in the capacity for which they are organized, and in which they have secured a franchise, but have the right to prescribe for their convenience and security and the protection of the public such rules and regulations, with which their patrons must comply, as are reasonable and just. The reason for this rule is, that although *quasi*-public corporations operating in cities, under a franchise obtained from municipal authorities, are organized for private gain, the consideration for permitting them to occupy the streets of towns and cities to carry on their business is, that thereby the inhabitants of such municipalities may be furnished with conveniences and necessaries; hence, it follows that in return for the right to install appliances in the public streets, they assume the duty to furnish the commodities conducted through such appliances, to the inhabitants of the city granting such right, without discrimination, and without denial except for good and sufficient cause. The Seaton Company is a corporation organized for the purpose of manufacturing and selling electric light and steam or water heat; has a franchise from the city of Idaho Springs to carry on that business within its corporate limits; has installed pipes and other appliances in and under the streets through which to conduct the steam or water intended for heating purposes, and must, therefore, supply such of the inhabitants of that municipality with its products as comply with such rules and regulations of the company as it may lawfully impose; but such regulations must be reasonable, just and lawful; not capricious, arbitrary,

oppressive or unreasonable; neither can they be discriminatory. — *Watauga Water Co. v. Wolfe*, 99 Tenn. 429; *Shiras v. Ewing*, 48 Kan. 170; *Shepherd v. Milwaukee Gas Light Co.*, 6 Wis. 526; 20 Cyc. 1160-1162-1163; 2 Beach on Corporations, § 835; *Portland Natural Gas Co. v. State*, 135 Ind. 54; *Haugen v. Albina Light & Water Co.*, 21 Ore. 411; *Owensboro Gas L. Co. v. Hildebrand*, 42 S. W. (Ky.) 351.

The first important question, then, to determine, is whether or not the condition imposed by the notice which the defendants served upon plaintiffs is reasonable. It is clear from its own reading that it is not. Plaintiffs are required to take electric current for lighting purposes as a condition precedent to being furnished with steam for heat. This is simply coercion, and an attempt on the part of the defendants to compel the plaintiffs to purchase electric current which they may not want or need. If they can be permitted to do this, then they can also say to plaintiffs, "We will not furnish you with electric current unless you also take steam." It is their privilege to determine whether they desire one or both of the commodities which the Seaton Company manufactures and sells, and a condition which imposes an obligation to take both or neither, is not only unreasonable, but capricious, arbitrary, oppressive and discriminatory.

Counsel for defendants contend that generating electricity for light and power purposes, as stated in the answer, is the principal business of the Seaton Company, and that the exhaust steam which is used for supplying heat is a by-product produced by the generation of electric current for light and power; that if the steam-heating proposition were to be run independently, it could not be operated at a profit, and that these circumstances and conditions must be considered in determining the reasonableness of

the condition imposed by the notice, and that the defendants should not be compelled to furnish a by-product of the electric light plant, unless it is furnished in conjunction with the principal product, namely, electricity.  While it is true that the Seaton Company is engaged in manufacturing and selling electric current and utilizes the exhaust steam from the plant used in manufacturing the electric current for the purpose of furnishing heat, the business of the Seaton Company, so far as these two products are concerned, is separate and distinct.  It did not secure a franchise from the city merely to furnish heat from a by-product or exhaust steam, but obtained the right to place and maintain underground lines of pipe under and through the streets ''for the purpose of conducting, transmitting and distributing heat, either hot water or steam, for the purchase and use by said city and the residents and citizens thereof.''  It cannot excuse its proposed action on the ground that furnishing steam alone will entail a loss which can be avoided if electric current is also taken by the consumer for lighting purposes; neither will it be permitted to impose the condition that a consumer must purchase both of its products in order that its profits may be increased, or loss prevented.  The fallacy of the argument of counsel is at once apparent when we come to consider the conditions to which it would lead if upheld.  If the Seaton Company, in manufacturing electric current, generated an excess of steam, it could require patrons, or those who proposed to become patrons, to purchase steam as a condition precedent to being supplied with electric current, although they might not require or have any use for steam heat whatever, should the contention of counsel for defendants be upheld.  The results which could follow if defendants were permitted to enforce the condition of their

notice, at once stamps it as unreasonable and unjust. The consumer has the right to determine for himself which commodity he will take. It must be borne in mind that what has been said, in passing upon the condition which the defendants sought to impose by the notice under consideration, is limited to that condition, under the facts of this case, relative to that subject.

It is next urged that the court erred in making the injunction permanent without testimony. A plaintiff need not prove what is alleged in his complaint and admitted by the answer.—*Cowan v. Cowan,* 16 Colo. 335; *Michael v. Mills,* 22 Colo. 439.

The answer admitted the notice set up in the complaint, and in addition alleged that it was the intention of the defendants to enforce its terms. The sole question presented to the court under the pleadings was, whether the condition which the defendants sought to impose by the notice was reasonable. On its face it is not, and it was incumbent upon the defense to plead facts which would justify the condition which they sought to impose upon the plaintiffs. If the defendants pleaded any such facts they should have introduced evidence to establish them, for the reason that the burden of proving a fact rests upon the one who asserts the affirmative of an issue.—*Little Pittsburgh Cons. Mining Co. v. Little Chief Cons. Mining Co.,* 11 Colo. 223; 1 Greenleaf on Evidence, § 774.

They sought to present this issue by pleading facts to the effect that the exhaust steam from the plant was but a by-product, and utilized for furnishing heat, and that they could not afford to furnish the latter to a patron unless he also purchased electric current for lighting purposes from them. If this was a good defense, it was affirmative in its nature, was controverted by plaintiffs, and the

(9)

burden rested with defendants to establish it, and as they declined to offer any testimony, there was nothing for the court to consider on the subject of the reasonableness of the condition imposed by defendants imposing it. We have determined, however, that this defense was not good; and this brings us to a consideration of the next proposition urged by counsel for the defendant, to the effect that a judgment on the pleadings should not have prevailed when an issue of fact tendered by the answer was undisposed of.

A motion for judgment upon the pleadings should be sustained when, under the admitted facts, the moving party would be entitled to judgment on the merits, without regard to what the findings might be upon the facts upon which issue is joined. — *Mills v. Hart,* 24 Colo. 505; *Harris v. Harris,* 9 Col. App. 211.

This proposition rules the case at bar. From what we have already said, any finding of fact which the court might have made after hearing testimony on the issues tendered by the portion of the answer under consideration, would not have affected the rights of the parties to the action, or authorized any judgment different from that pronounced on the facts conclusively established by the pleadings of the respective parties. This is not a case where the defense interposed was defective, either in form or substance, but one where the facts therein stated could not affect the rights of the parties, whatever the finding of the court thereon might have been, had testimony been introduced and considered. Aside from this, as already stated, the court properly disregarded this defense, when the defendants declined to introduce testimony to establish it, its averments being controverted by plaintiffs.

It is next urged that mandamus was the proper remedy and that injunction is not. The Seaton Company was already furnishing steam for heating to the plaintiffs, but had notified them that after a certain date steam would be cut off, unless a condition, which we have determined could not be enforced, was complied with. Mandamus is a common-law remedy to compel action; injunction an equitable remedy to prevent action, and maintain the parties *in statu quo;* so that a person desiring a commodity manufactured and sold by a *quasi*-public corporation may resort to mandamus to compel a supply when the supply has not yet been commenced; and in equity, when the supply is being furnished, to enjoin its stoppage.—13 Ency. Pl. & Pr. 500; 20 Cyc. 1164; *Golden Canal Co. v. Bright,* 8 Colo. 144; *Sickles v. Manhattan Gas Light Co.,* 66 How. Pr. 314.

The final question urged upon our attention is, that the court erred in sustaining the demurrer to the last defense. The weight of authority supports the rule that a champertous contract for the prosecution of a cause of action cannot be interposed as a defense, but can only be set up between the parties when the champertous agreement itself is sought to be enforced. — 6 Cyc. 881; 5 Ency. 830 *et seq.;* Hammon on Contracts, § 239 *et seq.,* p. 429; *Penn Co. v. Lombardo,* 49 O. St. 1; *Burns v. Scott,* 117 U. S. 582; *Forbes v. Mohr,* 69 Kan. 342; *Gage v. Downey,* 79 Cal. 140; *Currency M. Co. v. Bentley,* 10 Col. App. 271.

There are, perhaps, some exceptions to this rule, but the case at bar does not fall within any of them.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.