[No. 11529.    Department One. — June 30, 1886.]

JAMES H. SWIFT ET AL., RESPONDENTS, v. T. GOOD-
RICH ET AL.. APPELLANTS.

RIPARIAN PROPRIETORS — USE OF WATERS OF STREAM — LEASE — ESTOPPEL.
  — An upper riparian proprietor who enters into an agreement, purport-
  ing to be a lease, with a lower proprietor, whereby the latter grants to
  him for a certain term the right to the use of the waters of the adjoin-
  ing stream for domestic purposes and irrigation, is not, upon the expiration
  of the agreement, estopped from asserting his right as a riparian proprie-
  tor to the use of the water of the stream.

APPEAL from a judgment of the Superior Court of
Santa Barbara County.

The action was brought to restrain the defendants
from using or diverting the waters of a certain stream.
The plaintiffs recovered judgment as prayed for. The
further facts are stated in the opinion of Mr. Justice
McKinstry.

*R. B. Canfield*, for Appellants.

*W. C. Stratton*, for Respondents.

McKINSTRY, J.—The complaint was demurred to on
the ground that it did not state a cause of action.

The complaint avers that the plaintiffs and defendants
are riparian proprietors,—the lands of defendants lying
above those of the plaintiffs, on Bush Creek. And fur-
ther avers that on the fourth day of March, 1874, Jarvis
Swift (predecessor in interest of plaintiffs) and B. T.
Dinsmore (grantor of defendants) executed a certain
instrument in words and figures as follows:—

"This indenture of lease made and entered into this
fourth day of March, A. D. 1874, between Jarvis Swift,
the party of the first part, and B. T. Dinsmore, the party
of the second part, both residents of Montecito, in the
county of Santa Barbara, state of California, witnesseth:
That the said party of the first part hereby grants to the
party of the second part the right and privilege to the

free use of the water of a certain stream running near
the house of said Dinsmore, known as Bush Creek, for all
the necessary purposes of his house use, and the same to
be taken from said stream where it is now taken, and
then to be turned back into the stream at a point imme-
diately below where the party of the second part now
obtains water for family and house use, and the party of
the first part further agrees that the party of the second
part shall have the use of the water for irrigation to the
same amount now required as often as it shall be neces-
sary, and without waste or injury to the party of the
first part, and after the water has been so used, to be
turned back again into the stream at the same point
heretofore mentioned; and the said party of the second
part agrees and binds himself to not use the water so
taken from said stream for any other purposes than
those agreed upon by this lease, and in such a manner
as to avoid the least waste, and after using the water for
irrigation, to turn it back into the stream at the point
above mentioned, and that he will use all reasonable
efforts to keep the water confined in the place where said
water is to be returned into the stream, and for the
privileges hereby granted by this lease, the party of the
second part agrees to pay to the party of the first part
one dollar per year for the period of ten years; this lease
shall be for the term of ten years from this date.

"JARVIS SWIFT.
"B. T. DINSMORE."

.That immediately upon the execution of said "lease,"
Dinsmore used the water of said creek as therein pro-
vided, and he and his successors so used said water dur-
ing the term in the lease specified.

That the lease expired March 4, 1884, and that defend-
ants have continued ever since to use, and will unless
enjoined continue to use, the water "for all necessary
house use, at the house mentioned in said lease (on

defendant's land), and to use said water upon said land owned by them for the purposes of irrigation," etc.

Unless the defendants are estopped by the written agreement from using the waters for necessary household purposes, or from using the water for irrigation, the complaint states no cause of action. A riparian proprietor may take water from the stream for necessary household purposes, and may make reasonable use of it for purposes of irrigation. (*Lux* v. *Haggin,* 69 Cal. 255.) There is no averment in the complaint that the upper riparian proprietors have been or are using an unreasonable quantity of water for irrigation purposes, or of facts showing that the quantity used for such purposes has been or is unreasonable.

The position of respondents is, that when the grantor of defendants executed the "lease," he admitted that his only right to the use of the water was that which he acquired under and by virtue of the lease; that the plaintiff's cause of action is founded on the fact that the lease has expired, and that defendants are estopped from claiming any right to the use of the water, and should be compelled to discontinue it.

The question in this case is not what were the respective rights of the parties to the agreement of 1874, or of their successors, while the written agreement was in force, but what were their rights when this action was commenced.

Respondents rely upon the fourth subdivision of section 1962 of the Code of Civil Procedure: "A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation."

The statute relates to existing tenancies. But upon principles of justice and policy, the courts hold that a tenant cannot remain in possession of the land demised after the expiration of his term, and while so in possession, dispute the landlord's title. He is estopped to do so because he entered into and obtained the possession

from the landlord.   (Bigelow on Estoppel, 372, 381–384.)
After the expiration of the lease, however, he may sur-
render the possession, and then assert a title hostile to
that of the landlord.

A statement of the doctrine shows that it is not appli-
cable to a case like the present.   For aught that appears,
defendants and their grantors have been in possession of
the *land* through which the creek flows since a date ante-
cedent to the execution of the written instrument.   They
are not called on to surrender the land, or the water on
the land, to the plaintiffs, before asserting a right to the
reasonable use of the flowing water.

How could defendants surrender to the plaintiffs the
use of the water except by ceasing to use it?   If this
were necessary, a cessation of the use, for however limited
a period, would authorize them to assert their right to a
renewed use.   But to say that a cessation of the use for
a day or an hour (by which the plaintiffs would secure
no substantial benefit) must precede the assertion by de-
fendants of a right to the use of the water would lead to
an absurdity.   On the other hand, if the defendants here
are forever estopped from claiming any use of the water,
they occupy a very different and much less desirable
position than any tenant of real property with reference
to his former landlord.

But the relation of landlord and tenant, to which the
rule as to estoppel is referable, never existed between the
parties to the written agreement or between their suc-
cessors.   Though contracts with respect to incorporeal
hereditaments may be good as contracts, they do not
create the relation of landlord and tenant.   (1 Washburn
on Real Property, *310.)   There may be an enjoyment
of the easement, but no possession such as can be made
the basis of an action of ejectment.   (Taylor's Landlord
and Tenant, sec. 699.)   The definition of an easement
excludes the idea of its being held as a tenancy.   (Bing-
ham on Real Property, 17.)   No action (of ejectment)

will lie to recover possession of a watercourse. (Angell on Watercourses, sec. 8.) If it be conceded that the parties to the written agreement might be estopped from denying admissions contained in it while it was operative, the defendants were not "tenants" within the meaning of subdivision 4 of section 1962 of the Code of Civil Procedure. Nor are they tenants holding over to whom is applicable the prohibition which precludes such from denying the title under which they entered into possession of corporeal hereditaments until after they have returned the possession to him from whom they received it.

The demurrer to the complaint should have been sustained.

Judgment reversed, and cause remanded.

MORRISON, C. J., concurred.

MYRICK, J., concurring.—It is stated by respondents (plaintiffs) in their brief, that their cause of action is founded upon the fact that the lease has expired, and the defendants should discontinue the use of the water; that there is no issue as to the rights of riparian proprietors, and it is entirely immaterial whether they (plaintiffs) are or are not deprived of the use of the water. Plaintiffs assert that the taking of the lease should estop defendants from making any claim to the use of the water after the expiration of the term leased. I am of opinion that this assertion is not maintainable, and for that reason only I concur in the judgment.