[No. 13637. In Bank.—June 18, 1892.]

J. W. REAY, APPELLANT, *v.* JOHN BUTLER ET AL., RESPONDENTS.

APPEAL — REVIEW OF CONFLICTING EVIDENCE — DEPOSITIONS — ORAL EXAMINATION OF WITNESS. — The fact that upon the second trial of a cause a large part of the testimony taken at the first trial was read without recalling the witnesses, and two or three depositions were introduced, does not warrant the appellate court in drawing its own conclusions from conflicting evidence, and disregarding the conclusions reached by the trial judge, where two or three witnesses, including the plaintiff himself, whose former testimony was read, were re-examined, and many others were examined whose testimony was to a large extent important and material.

ID. — REASONS OF RULE AS TO REVIEW OF EVIDENCE — APPELLATE JURISDICTION. — The rule that this court will not review the finding of a jury or of a court as to a fact decided upon the weight of evidence is not adopted merely because the court below has the opportunity to observe the appearance and bearing of the witnesses, but is founded in the essential distinction between the trial and appellate courts under our

system, and grows out of consideration of jurisdiction, that it is the province of the trial court to decide questions of fact, and of the appellate court to decide questions of law, and that this court can rightfully set aside a finding for want of evidence only where there is no evidence to support it, or where the supporting evidence is so slight as to show an abuse of discretion.

ID. — REVIEW OF WRITTEN EVIDENCE — CONFLICTING EVIDENCE. — The appellate court will look more closely into the evidence when it consists entirely of depositions, affidavits, or notes of former testimony; but it cannot be taken as settled that in such a case the rule as to conflicting evidence does not apply.

POSSESSION OF LAND — INCLOSURE OF EXTERIOR BOUNDARIES OF TWO TRACTS HELD IN SEVERALTY — TRESPASS — CONTEST OF POSSESSORY RIGHTS. — If two owners in severalty of adjoining tracts of land by mutual consent inclose the two tracts together by a fence around the exterior boundaries of both, the inclosure thus made constitutes posses. sion as against any third party who is a mere intruder; and it is immaterial whether the lands are public or private, where the contest is merely one of alleged possessory rights between the parties to the action.

ID. — EJECTMENT — RECOVERY MUST BE UPON STRENGTH OF PLAINTIFF'S TITLE. — In an action of ejectment, the plaintiff must rely upon the strength of his own title, no matter how weak the title of his opponent may be.

ID. — INSUFFICIENT ACTS OF POSSESSION — ATTEMPTS TO BUILD SHANTIES — DESTRUCTION BY ADVERSE CLAIMANT. — The acts of the plaintiff in employing two men to build a small wooden shanty on the land claimed by him, who worked upon it two days, when the adverse claimant tore it down, and drove the men away, and in returning a few days afterward, and again attempting to build a wooden shanty, when he was again driven off, and the shanty torn down, do not constitute even a scrambling possession of the land beyond the spot on which the shanties were commenced to be built; and such a possession will not support an action of ejectment for the tract on which the shanties were sought to be erected.

ID. — CONSTRUCTIVE POSSESSION — DEED NOT TAKEN IN GOOD FAITH — COLOR OF TITLE. — A party who takes a deed to land not in good faith, believing that the grantor has any title to the land, but for the express purpose of asserting color of title, cannot invoke the doctrine that one entering upon land under color of title given by a deed has constructive possession to the extent of its boundaries.

ID. — EVIDENCE — DECLARATIONS OF DEFENDANT'S GRANTOR — ABANDONMENT — GENERAL CONVERSATIONS — LEADING QUESTIONS — RULING NOT PREJUDICIAL. — During the examination of a witness for the plaintiff in ejectment as to the declarations of one of the parties through whom the defendant claimed title, as to the abandonment of his claim to the land, it is not error to sustain an objection of the defendant to general conversations relating to the land, and to a leading question asked as to whether he said he would not return to the land, and when the witness, in answer to the question as to whether he said anything about the land, and what he said, without objection told what he did say, the ruling could not be prejudicial.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. B. Mhoon*, and *W. W. Foote*, for Appellant.

The rule that this court will not disturb a finding when there is a conflict of testimony does not apply, when the evidence is presented by depositions or notes of a former trial. In such a case, this court will examine the testimony upon the issues involved. (*Lander* v. *Beers*, 48 Cal. 547; *Wilson* v. *Cross*, 33 Cal. 69.) As the land in question was part of the pueblo land of the city, the inclosure of the tract by a fence around the whole tract, and its being held by "joint and common possession," was insufficient to constitute an actual possession which the ordinance contemplates. (*Wolf* v. *Baldwin*, 19 Cal. 306; *Elliott* v. *Pearl*, 10 Pet. 441; *Plume* v. *Seward*, 4 Cal. 95; 60 Am. Dec. 599; *Davis* v. *Perley*, 30 Cal. 638; *Polack* v. *McGrath*, 32 Cal. 18; *Brumagim* v. *Bradshaw*, 39 Cal. 44; *Lawrence* v. *Fulton*, 19 Cal. 690; *Le Roy* v. *Cunningham*, 44 Cal. 600; *Wolfskill* v. *Malajowich*, 39 Cal. 276; *Steinberger* v. *Andrews*, 4 Nev. 59.) It was error for the trial court to sustain the objections of defendant to the conversations relating to the land, and as to whether the witness abandoned the land. Abandonment is a question of intention, and may be inferred from acts and circumstances, though the person abandoning may declare he does not abandon. (*Myers* v. *Spooner*, 55 Cal. 257.) Upon a question of abandonment, as upon a question of fraud, a wide range should be allowed, for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any facts or circumstances from which any aid for the solution of the question can be derived. (*Bell* v. *Bed Rock Co.*, 36 Cal. 218; *Wilson* v. *Cleaveland*, 30 Cal. 192.) If possession is a fact, then Reay certainly had it by actual occupation, when Tread-

well tore down his house, and drove his tenant, Miller, away. If it is a conclusion of law, then we ask who had possession during the month that Miller, Reay's tenant, was confessedly on the place, in the house that Treadwell built. A tenant cannot, by attorning to a third party, affect his original landlord's possession. (Sedgwick and Wait on Trial of Title, sec. 354; Taylor on Landlord and Tenant, sec. 180; Stats. 1855, p. 171; Civ. Code, sec. 1948; *Thompson* v. *Felton*, 54 Cal. 547; *Thompson* v. *Pioche*, 44 Cal. 508; *Doe* v. *Reynolds*, 27 Ala. 376; 1 Washburn on Real Property, *363.) The deed from Owens to Reay, although it might have been inoperative as a conveyance, showed color of title. (*Packard* v. *Moss*, 68 Cal. 127; *Minot* v. *Brooks*, 16 N. H. 374.) The question as to what is "color of title" is a question of law. (Wood on Limitations, 531.) Whether it be admitted or not that Owens's deed was ever executed and delivered, clearly the lease to Miller is a fact, and all the time Miller held and attorned to Treadwell, he, in law, is deemed to have been in possession of the premises under this lease. Such a lease is also color of title, and defines the extent of the tenant's possession. (*Murphy* v. *Snyder*, 67 Cal. 452; *McLeran* v. *Benton*, 73 Cal. 329; 2 Am. St. Rep. 814.) Reay believed he had a right to go upon this tract, and that is evidence of his good faith. (*McCracken* v. *City of San Francisco*, 16 Cal. 636; Sedgwick and Wait on Trial of Title, sec. 775.) But where is the evidence of Reay's bad faith, or want of good, upon which this finding is supposed to be based? It cannot be presumed. On the contrary, *bona fides* will be presumed until the contrary appears. (*Brooks* v. *Bruyn*, 35 Ill. 394; *McMullin* v. *Erwin*, 58 Ga. 427.) Speck claimed no interest in Killian's tract of land, and Killian claimed none in Speck's; yet Killian was in as much possession of the land in suit as was Speck; the exclusive possession required was destroyed. (*Brumagim* v. *Bradshaw*, 39 Cal. 24.) Speck's inclosure without exclusive possession is not sufficient. (*Polack* v. *McGrath*, 32 Cal. 15.) Although there might be a case of tenancy in common of

a naked possession of public land, if all the co-tenants actually occupied the land (*Lillianskyoldt* v. *Goss*, 2 Utah, 292), still, as Speck left the tract of land in question here, the co-tenancy in the naked possession ended. Such possession must be exclusive. (Sedgwick and Wait on Trial of Title, 752, citing authorities.) Speck's and Treadwell's joint possession or occupation with Killian, as referring to private land, would have doubtless been good as against a third person, even the owner, because it was presumptively adverse to him. But such occupation or possession is not effective in the case of public land, for the reason that by the statutes, this possession must be actual or by tenant, in order to ripen into a title against the public. It must also be visible to all, exclusive of all, and hostile to all; and the possession of private land must be visible to, hostile to, and exclusive of the true owner, before it can ripen into a title. (Wood on Limitations, sec. 257; Washburn on Real Property, 489; *Sparrow* v. *Hovey*, 44 Mich. 63.)

*S. M. Wilson*, and *W. S. Goodfellow*, for Respondent.

There was a great conflict of evidence on some of the important points in the case, and there is no reason why the general rule should not be applied, that this court will not disturb the findings upon a question of fact where the evidence is conflicting. (*Escolle* v. *Merle*, 9 Cal. 95; *Pfeiffer* v. *Riehn*, 13 Cal. 643; *Burnett* v. *Whitesides*, 15 Cal. 36; *Baxter* v. *McKinlay*, 16 Cal. 77; *Noonan* v. *Hood*, 49 Cal. 294; *Trenor* v. *C. O. R. R. Co.*, 50 Cal. 222.) Speck never abandoned the property until he sold the property. Abandonment consists in leaving the premises vacant, without the intention of reclaiming the possession, or appropriating it in any manner to the use of the possessor subsequently, and with a view to leave it open to the occupation of any one who may choose to enter. (*Smith* v. *Cushing*, 41 Cal. 97; *Judson* v. *Malloy*, 40 Cal. 299.) The intention to abandon is not necessarily to be inferred from the fact that the premises have been left vacant, unimproved,

and without attention for more than five years before
the commencement of an action, but such a fact may be
taken into consideration in deciding the question of
abandonment. (*Judson* v. *Malloy*, 40 Cal. 299; *Moon* v.
*Rollins*, 36 Cal. 333.) The fact that a person when ceas-
ing to occupy premises leaves a person in charge is of
itself sufficient to rebut the presumption of abandon-
ment arising from a cessation of occupancy. The ques-
tion of abandonment is one of intention, proper for
determination by a jury under the circumstances, or by
the court, a jury being waived. (*Keane* v. *Cannovan*, 21
Cal. 291; 82 Am. Dec. 738; *Roberts* v. *Unger*, 30 Cal. 676.)
The defendants were not in the possession of the land
when the action was commenced. It was essential for
the plaintiff to allege and prove the possession of the de-
fendants at the time of the commencement of the action.
(*Owen* v. *Morton*, 24 Cal. 373; *Pope* v. *Dalton*, 31 Cal. 218;
*Buhne* v. *Corbett*, 43 Cal. 264; *Brown* v. *Brackett*, 45 Cal.
167; *Mahoney* v. *Middleton*, 41 Cal. 41; *Miller* v. *Chandler*,
59 Cal. 540; *Shaeffer* v. *Matzen*, 59 Cal. 652; *Soto* v. *Irvine*,
60 Cal. 436; *Dillon* v. *Center*, 68 Cal. 561.) The rule as
to color of title laid down in *Walsh* v. *Hill*, 38 Cal. 481,
is the settled law of this state. (*Wilson* v. *Atkinson*,
77 Cal. 485, 491–493; 11 Am. St. Rep. 299; *Webber* v.
*Clarke*, 74 Cal. 16.) The Van Ness ordinance is referred
to, and it is argued that Treadwell's possession was not
such as is required by that ordinance. But there may
be possession sufficient for a defense, or even for a re-
covery in ejectment, although not sufficient to entitle
the holder to the benefits of the Van Ness ordinance.
(*Polack* v. *McGrath*, 32 Cal. 15.)

McFARLAND, J. — This is an action of ejectment, and
was commenced by plaintiff on February 20, 1866, in
the former district court of the fifteenth judicial district,
against John Butler and P. H. Owens, who were the
only persons named as defendants. In the complaint
it is averred that on the first day of January, 1863,

plaintiff was " seised and possessed " of certain described
land, situate in the city and county of San Francisco;
and that on said first day of January, 1863, the defend-
ants (Butler and Owens) wrongfully entered upon said
land, " and ousted and ejected plaintiff therefrom, and
ever since have held and now hold possession thereof
from plaintiff."

There was a former appeal in this case, reported in
69 Cal. 573; and from the opinion of this court, then
delivered, it appears that Butler and Owens answered,
denying all the averments of the complaint, averring that
J. P. Treadwell was " the owner and in possession " of
the land sued for; that they (Butler and Owens) were
there only by license of Treadwell, and praying that the
latter be allowed to defend the action, and that they be
dismissed; and that by leave of court Treadwell filed an
intervention in which he set up matters upon which he
claimed certain equitable relief.  It appears further, that
the district court, after having impaneled a jury to try
the cause, and after the trial had commenced, concluded
to try what were supposed to be the equitable issues first,
and against the objections and exceptions of plaintiff,
discharged the jury, and after a hearing of said equi-
table issues, rendered judgment perpetually enjoining
plaintiff from further prosecution of his action.  But on
the appeal from that judgment this court held that there
were no equitable issues, and that plaintiff was entitled
to a jury trial, and reversed the judgment, with directions
to strike out the intervention, and that the representa-
tive of the intervener (said Treadwell in the mean time
having died) be allowed to defend the action.

When the case went down to the superior court, new
answers were filed for Owens and Butler; and Mrs. Mabel
Treadwell, who was then administratrix of said J. P.
Treadwell, filed an answer, by leave of court, in her own
name.  In her answer she denied all the averments of
the complaint; and she averred that at the commence-
ment of the action, and for more than five years prior

thereto, said J. P. Treadwell, by himself and his grantors
and predecessors, was and had been the owner and in
possession of all that part of the land sued for which
was known as the " Speck ranch," and was in possession
of the same continuously until his death, which occurred
in December, 1884; that since his death she, as adminis-
tratrix, has been in possession thereof, and the estate of
said Treadwell, deceased, and his heirs and devisees, are
the owners and entitled to the possession thereof; and
that at the time of the commencement of the action the
defendants Owens and Butler were not in possession of
any of the land described in the complaint, but were, to
plaintiff's knowledge, the mere servants and employees
of said J. P. Treadwell.   Both parties waived a jury;
and the court, after a second hearing of the case, made
its findings of fact, and found, as a conclusion of law,
" that defendants are entitled to judgment in this action."
Whereupon judgment was entered that " plaintiff take
nothing by this action," and that defendants be dismissed
and recover costs of plaintiff.   Plaintiff made a motion
for a new trial, which was denied, and he appeals from
the judgment, and from the order denying his said
motion.

There is only one assignment of error occurring dur-
ing the trial, which will be noticed hereafter.   The main
contentions of appellant are, that the evidence is insuffi-
cient to justify the findings of fact, and that the decision
is against law.   It is clear, however, that if the findings
are justified by the evidence, then the conclusion of law
and the judgment are correct; so that the real question
in the case is, Does the evidence justify the findings?

At the trial, by consent of the parties, a large part of
the testimony taken at the first trial was read without
recalling the witnesses, and two or three depositions
were introduced; and appellant contends that when a
case has been decided by the lower court upon this kind
of evidence, the rule that this court will not disturb a
finding when there is a conflict of evidence does not
apply, and that this court should sit practically as a

*nisi prius* court, and draw its own conclusions from the evidence, regardless of the conclusions arrived at by the jury or the judge in the trial court. While, for the reasons hereafter stated, the determination of this point is not absolutely essential to the decision of this appeal, it may be well for the benefit of future litigants to intimate that the doctrine contended for has not, thus far at least, become the settled law of this state. It has been held here in more than a hundred cases, commencing with *Payne* v. *Jacobs*, 1 Cal. 39, in the first published books of reports of this court, and ending with *Dobinson* v. *Mc-Donald*, 92 Cal. 33, in the last volume of such reports, that the finding of a jury or a court as to a fact decided upon the weight of evidence will not be reviewed by this court; and so the general rule is clearly established. It was said, however, in the opinion of the court in two or three cases, notably in *Wilson* v. *Cross*, 33 Cal. 60, that the reason of the rule is, that the court below has the advantage of observing the appearance and bearing of the witnesses, and that such reason does not obtain when the witnesses do not appear personally in court. But it may be well argued that such is not the only reason of the rule; that it is founded in the essential distinction between the trial and the appellate court under our system, and grows out of considerations of jurisdiction; that it is the province of the trial court to decide questions of fact, and of the appellate court to decide questions of law; that this court can rightfully set aside a finding for want of evidence only where there is no evidence to support it, or where the supporting evidence is so slight as to show abuse of discretion. Indeed, there are numerous cases in which the decisions of this court have been directly contrary to the doctrine contended for by appellant. For instance, it has been held directly in several cases that the rule as to conflicting evidence applies to a case where the trial was before one judge, and the motion for a new trial passed upon by his successor, and where the latter saw none of the witnesses; or where the trial was before the old district court, and the motion

before the succeeding superior court. (*Bauder* v. *Tyrrel*, 59 Cal. 99; *Altschul* v. *Doyle*, 48 Cal. 535; *Macy* v. *Davila*, 48 Cal. 647.) The same rule has been applied on appeal from an order dissolving an injunction, where all the evidence in the lower court was upon affidavits. (*Parrott* v. *Floyd*, 54 Cal. 535.) In *Bauder* v. *Tyrrel*, 59 Cal. 99, the court says: "The trial court decides as to the facts, the court of review (in this state) as to questions of law only." The appellate court will, no doubt, look a little more closely into the evidence when it consists entirely of depositions or affidavits, or notes of former testimony; but it cannot be taken as settled that in such a case the rule as to conflicting evidence does not apply.

But even if the rule were as appellant contends, it would not apply to the case at bar; for in this case two or three witnesses, including the plaintiff himself, whose former testimony was read, were re-examined at the last trial, and about fifteen new witnesses were examined, whose testimony was to a large extent important and material; and under these circumstances, it is quite clear that the general rule as to conflicting evidence applies. (*Blum* v. *Sunol*, 63 Cal. 341.)

The appellant's objections to the findings as not supported by the evidence refer mainly to those findings which set forth the possessory right of the said J. P. Treadwell to the land in controversy at the time of the alleged ouster. The findings as to such right are, in brief, as follows: In the year 1853 one Alexander Speck entered upon a tract of land containing about forty-one acres, and known afterwards as the "Speck ranch," being part of the premises described in the complaint. It was then part of the unoccupied pueblo lands of San Francisco. In that year (1853) he built a house on the land, and lived there during part of that year, and during the next year, and down to October, 1855. He made charcoal at various times from wood on the land, and had a garden on it, and raised vegetables. A man named Killian claimed a piece of land containing about thirty-nine acres, which adjoined the Speck ranch on the

north; and in 1853, Speck and Killian jointly built substantial brush fences around the exterior boundaries of the two tracts, which fences, together with some fencing which had been built by other adjoining claimants, inclosed the two tracts with fences sufficient to turn cattle; and these fences were at all times, down to the commencement of the action, sufficient to turn cattle. There was no fence along the boundary line between the land claimed by Speck and that claimed by Killian, but each recognized the claim of the other, and the fences were built jointly for the purpose of protecting each in the possession of what he claimed. In October, 1855, Speck went to the mines, but did not abandon the Speck ranch. He left it in the possession and keeping of one Robert Sheridan, as tenant of himself and Killian. Sheridan lived with his family in the Speck house, manufactured charcoal out of wood on the land, kept the exterior fences around both tracts in good condition, and held possession until the spring of 1859. After Sheridan left, Killian took charge and possession of the two claims for himself and Speck, and early in 1860 placed one Markgraf in possession as the employee of both. Markgraf repaired the fences, and built some new fencing. He resided on the Killian claim within the common inclosure until Christmas, 1861. He also built a new house on the Killian claim, and Killian resided in said new house from some time in 1861 to the end of 1862. In February, 1861, Speck executed to one Marye a power of attorney (recorded March 6, 1861) to sell and convey the Speck ranch on his (Speck's) behalf, and on March 1, 1861, Marye sold and conveyed the same to one Austin E. Smith,—deed recorded March 6, 1861. Through conveyances from Smith and his grantee, all right and title of said Speck to said Speck ranch vested in said J. P. Treadwell on April 28, 1862. Treadwell was a *bona fide* purchaser, and entered into possession without notice of any other claim to the land except that of the city and county of San Francisco. The defendants Owens and Butler never had any possession of

the land in contest, but at the time of the commence-
ment of the action were the mere employees of Tread-
well, and occupied in building a house for the latter.

The foregoing are the main facts found with respect
to the possessory right of Treadwell; but there are many
details in the findings not necessary to be recited here.
There was conflicting evidence as to some of the facts
found, particularly as to whether the fences around the
two tracts were kept up in good condition; whether
Speck's house was below or above the line between his
land and that of Killian; whether Speck abandoned his
claim when he went to the mines; whether Sheridan and
Markgraf were in possession under Speck; whether Kil-
lian always recognized the right of Speck, and was in
possession for both himself and Speck, etc.   But upon
an examination of the evidence, we find that it suffi-
ciently supports the findings of the facts upon which
Treadwell's possessory rights are based, and we perceive
no abuse of discretion committed by the lower court in
making such findings.   It is contended by appellant
that the common inclosure of the two tracts by an exte-
rior fence around both did not constitute possession by
either claimant,—there being no tenancy in common
between them.   But if two owners in severalty of adjoin-
ing tracts of land, by mutual consent, inclose the two
tracts together by a fence around the exterior bounda-
ries of both, it seems clear enough that the inclosure
thus made constitutes possession as against any third
party who is a mere intruder.   It is contended, also, that
even if this rule were good as to private lands, it cannot
be applied to the possession of public lands; but we fail
to see the distinction, so far, at least, as to affect the case
at bar.   Here there is no question as to what kind of
possession, or what acts, would give to the occupant of
public land the right to acquire the title in fee from the
public proprietor.   The case merely presents a contest
of alleged possessory rights between the parties to the
action, and the title of the real proprietary owner cuts
no figure.

2. But really the court below and counsel have attached more than its just importance to the right acquired by J. P. Treadwell from Speck. This is an action of ejectment, in which plaintiff must rely upon the strength of his own title, no matter how weak the title of his opponent may be. And when we come to examine the right of plaintiff to recover, we find that it has no foundation. The court finds that "the plaintiff herein never had, nor did any ancestor, predecessor, or grantor of plaintiff ever have, any possession of the lands, or any part of the lands described in the complaint"; and this finding is amply supported by the evidence, whether we look at it with the eyes of an appellate or *nisi prius* court. The only *facts* upon which his alleged possessory claim rests are these: During the first half of October, 1862, plaintiff employed two men to build a small wooden shanty on the land; but after they had worked about two days, and before the shanty was finished, Treadwell heard of it, and went upon the land, tore down the shanty, and drove the men away. A few days afterwards plaintiff again went upon the land, and attempted to build a wooden shanty, when the same thing again happened, that is, Treadwell tore down the shanty before it was completed, and drove away the man, who, together with two bull-dogs, was sleeping in it without bed or bedding. No further act was done by plaintiff in the premises; but between three and four years afterwards he commenced this action of ejectment; and we think it so clear that these acts do not constitute such a possession as will support ejectment that an elaboration of the point would be useless. He did not have even a "scrambling" possession of any land except the spot on which the shanties were commenced to be built; and that spot cannot now be definitely located. Appellant claims that when he commenced to build the shanty he had a deed from P. H. Owens, which purported to convey the premises described in the complaint; and he invokes the doctrine that one entering upon land under color of title given by a deed has constructive possession to the

limits of the boundaries described in the conveyance. But in the first place, the court found that he never had such a deed. The evidence on the point was this: Appellant testified that he once had such a deed, and had lost it; and Owens testified positively that he had never executed any such deed; and, under such circumstances, we certainly could not hold the finding unwarranted by the evidence. And in the second place, it plainly appears from the evidence that if appellant ever had such deed, he did not take it in good faith, believing that Owens had any title (and he did not have any), but for the express purpose of asserting color of title. And as this court said in *Wilson* v. *Atkinson,* 77 Cal. 492; 11 Am. St. Rep. 299: "It could not be justly said that a party was founding his claim upon a written instrument, as being a conveyance, when he knew the instrument to be absolutely void. The code should be construed as requiring the claim to be made in good faith, believing the deed to be a conveyance of the property." (What effect such a deed would have upon the rights of a party who had held possession for five years, and pleaded the statute of limitations, does not here arise.)

It is contended that the court erred in ruling upon the admissibility of evidence during the examination of the witness Mrs. Ann Cook. The alleged error, if it existed, would not be important enough to affect the determination of the case; but there was no error. The appellant was trying to get from the witness declarations of Speck, tending to show his abandonment of his claim to the land; and the record merely shows that the court sustained an objection to general conversations not relating to the land. Appellant then asked the witness, "Did he say in that conversation that he would not return to this land?" and an objection that it was leading was sustained. The question was then asked, "Did he say anything about this land? if so, what?" and the witness, without any objection, went on to tell what he did say. In all this we see no error, — certainly no prejudicial error.

In his assignments of error, and in his briefs, appellant has stated his positions under many subdivisions and heads of discussion; but we think that we have referred to all matters necessary to be noticed. We see no good reason for disturbing the judgment.

Judgment and order denying a new trial affirmed.

GAROUTTE, J., SHARPSTEIN, J., and PATERSON, J., concurred.

DE HAVEN, J., concurred in the judgment upon the second ground discussed in the foregoing opinion.

HARRISON, J., being disqualified, did not participate in the foregoing decision.