[Civ. No. 2529.   Third Appellate District.—March 17, 1923.]

# OTIS REDEMEYER, Respondent, v. JOHN CUNNINGHAM, Appellant.

[1] DEEDS—SUFFICIENCY OF DESCRIPTION.—To be valid on its face, a deed must contain such a description of the real property thereby intended to be conveyed as will enable the property to be readily located by reference to the description.

[2] ID.—DESCRIPTION BY REFERENCE.—Although the parties to a deed may describe the property therein conveyed, by a reference therein to another deed or map which contains a description, the deed and the instrument referred to when taken together must be as certain in respect to the description as a description contained in the deed itself.

[3] EJECTMENT—TITLE IN THIRD PARTY—DEFENSE.—In an action in ejectment, when the plaintiff relies upon a paper title, the defendant may show the true title with right of possession to be outstanding in a third person, without connecting himself with it, and may thus defeat the action.

[4] ESTATES OF DECEASED PERSONS—DECREE OF DISTRIBUTION—GENERAL PROVISION COVERING UNKNOWN PROPERTY.—Where a decree of distribution distributes to certain designated persons specific real property and in said decree it is "further ordered, adjudged and decreed that any other property not now known or found be and the same is hereby distributed" to said persons, "share and share alike," this latter clause will include the title of the deceased to other adjoining real property not embraced in the property specifically described in the decree of distribution.

[5] EJECTMENT—DEFENSE—PRESCRIPTION — ACTUAL POSSESSION—EVIDENCE.—In an action in ejectment, the defendant is entitled to show actual possession of the property for the statutory period as one of the material elements of title by prescription.

[6] ID.—DEDICATION TO PUBLIC USE—EJECTMENT AGAINST TRESPASSER. Notwithstanding a strip of land has been dedicated to the public for public use as a highway, the owner of the fee may maintain an action in ejectment against a trespasser.

[7] ID.—OWNERSHIP—DEDICATION TO PUBLIC USE—INCONSISTENT DEFENSES—JUDGMENT.—Where the defendant in his answer in such action alleges that he is in possession of the disputed property under a claim of right and that he and his predecessors in interest had been in such possession since a specified year, which was more than five years prior to the commencement of the action, he is in no position to urge the further defense, by way of cross-complaint, that the property in question is a portion of a public highway, and said cross-complaint is properly excluded; and if defendant can

succeed in establishing his right to the possession of the property the court may in its judgment protect him against any interference with his use of it.

[8] ID.—ADVERSE POSSESSION—EXCLUSION OF EVIDENCE—SUFFICIENCY OF OFFER.—In an action in ejectment, when the trial court at the instance and pursuant to the objections of plaintiff erroneously excluded proof of one of the elements constituting title of defendant by adverse possession, such error alone constitutes ground for reversal, and thereafter it is not incumbent upon defendant to go through the useless and idle procedure of offering evidence of the remainder of the elements constituting his title by adverse possession. (Opinion on denial of rehearing.)

[9] ID.—ABSENCE OF TAX ASSESSMENT—BURDEN OF PROOF.—In an action in ejectment, if the defendant claims title by adverse possession the burden is upon him to prove that no taxes have been assessed against the property in question, if such be the fact. (Opinion on denial of rehearing.)

APPEAL from a judgment of the Superior Court of Mendocino County. Edward I. Butler, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

A. L. Wessels for Appellant.

Mannon & Mannon and Charles Kasch for Respondent.

BURNETT, J.—The action was in ejectment to recover the possession of a strip of land in the city of Ukiah, Mendocino County, described as follows: "Beginning at a point where the westerly line of Hortense Street if extended southerly would intersect the southerly line of Jones Street, and running thence southerly along the said westerly line of Hortense Street if extended southerly to the north line of Mill Street; thence easterly along the northerly line of Mill Street 24.3 feet to a certain fence; thence northerly along the line of said fence to a point in the southerly line of Jones Street; thence westerly along the southerly line of Jones Street 23 feet to the point of beginning."

To better understand what follows we append a replica of a portion of the map of Gobbi's Addition to the city of Ukiah filed in the county recorder's office in March 30, 1888, to which we have added the dotted lines, A B C D to indicate the boundaries of the disputed strip. We may call

attention at this point to the fact that on said map no division line between blocks 9 and 10 appears, and this circumstance is of importance in the controversy between the parties.

The answer to the verified complaint denied the ownership of plaintiff to any portion of said land or his possession or right to the possession thereof or that the defendant "ousted or ejected the plaintiff from said premises, or any part thereof," or that the defendant ever wrongfully or unlawfully withheld any portion of said premises from plaintiff. As a second defense it was alleged that the deeds under which plaintiff claimed title to said property, namely, a deed from one Terrence Rodgers of May 7, 1918, and from the same grantor of February, 1919, and a deed from Ella King Hodghead of March 20, 1919, conveyed no interest, since said grantors and each of them, "had no right, title, interest, claim or estate, either in law or in equity, in or to the premises described in the complaint, or any part thereof, or

ever had any right, title, interest, claim or estate therein.''
For a third defense, a title by prescription was sufficiently
set forth. Defendant also asked leave to file a cross-com-
plaint in which it was alleged that one William Proudfoot
on June 17, 1889, and for some time prior thereto, was the
owner of the land bounded by Jones, Dora, Mills, and Spring
Streets in said city, and while such owner he subdivided
the land into two tracts or subdivisions and named and
designated said tracts as ''block 9 and block 10 of Gobbi's
Addition to Ukiah City, and defined and described and fixed
the bounds and limits of each of said blocks, as follows:
block 9, aforesaid, as comprising and embracing the west
280 feet of the said tract, and being 280 feet, east and west,
and 200 feet, north and south; and block 10 as comprising
and embracing the remainder of said tract, and being 200
feet, east and west and 200 feet, north and south.'' It was
further alleged that the plaintiff is and has been for some
time the owner of said block 10 as thus described, and the
defendant and Nancy Cunningham the owners of the south
half of said block 9 and the defendant and certain heirs of
John C. Gobbi, deceased, were and are the joint owners of
the north half of said block 9 and that said block includes
the land in dispute; that after the subdivision of the said
tract of land by the said William Proudfoot, as aforesaid,
the owner of the tracts of land included in said block 9 and
said block 10, ''opened up, set aside, set apart, laid out,
defined and designated the east 80 feet of said block 9 as a
public highway for the use of the public, and also as a
private highway for the use and benefit of said owners, their
successors and assigns, and did by their acts, words and
deeds, and with the intention to dedicate and set aside the
same, dedicate and set aside the said tract of land, for such
public and private use; that thereafter, the owner of the
lands included in said block 9 and block 10, by mutual
agreement, acquiescence and consent, agreed to and did cut
down the width of said public and private highway to the
width of forty feet, with center line thereof unchanged, and
thereafter constructed substantial buildings and fences along
each side thereof as thus fixed, defined and established; that
said public and private highway, was by said owners, named,
designated and described as Hortense Street; that the said
street has been used continuously, except during the period

obstructed by the plaintiff as hereinafter mentioned by the public and by the owners of the lands in said blocks 9 and 10, and by the residents in that vicinity without objection on the part of any of the owners of said properties, for a period of more than twenty years prior to the commencement of this action''; that defendant and his cotenants as aforesaid are the owners of the fee to the land lying in said Hortense Street and are entitled to the possession thereof subject to its use as a public and private highway and ''each of them uses the same as a means of egress, ingress and regress to their lands in said block 9 aforesaid; that while the defendant and his cotenants aforesaid were so seized of said premises the plaintiff afterward, and on or about the 1st day of March, 1919, and without right or title, entered into possession of said premises and ousted and ejected the defendant and his cotenants therefrom and ever since has and now does wrongfully and unlawfully withhold the said premises, and the possession thereof from the defendant and his cotenants.'' Then follows an allegation that between March 1 and October 1, 1919, the plaintiff constructed a solid concrete wall and caused to be erected thereon a fence along and across the north and south entrances of said Hortense Street so as to completely obstruct it and prevent travel thereon and has ever since ''wrongfully and unlawfully and without right obstructed the said highway as aforesaid.'' The prayer was for the recovery of the possession of said street between blocks 9 and 10, subject to the use thereof for a public and private highway, that said obstructions be removed and the nuisance thereby created be abated and for general relief. The trial court declined to allow defendant to file said cross-complaint, and this is one of the rulings of which appellant complains.

To prove his title to the north 100 feet of the disputed strip plaintiff introduced two deeds from William Proudfoot (admittedly the common source of title) to E. W. King, dated June 17, 1889, and September 12, 1895, a decree of distribution in the estate of E. W. King, deceased, of the date of October 27, 1915, distributing the residue of his estate to Ella King Hodghead and a deed from her to plaintiff, dated March 20, 1919, describing the land as follows: ''Beginning at a point in the southerly line of Jones street 20 feet westerly of the easterly line of Hortense

street, if the same were extended southerly in its present course, thence westerly along the south line of Jones street to the intersection of what would be the westerly line of Hortense street if the same were extended southerly in its present course; thence southerly along said extension of the westerly line of Hortense street 100 feet; thence easterly and parallel to the southerly line of Jones street 60 feet, more or less, to a point 20 feet west of what would be the easterly line of Hortense street if the same were extended southerly in its present course, thence northerly 100 feet, more or less, to the point or place of beginning.''

As to the southerly 100 feet in controversy, plaintiff put in evidence a deed of reconveyance from E. W. King to William Proudfoot of September 17, 1895, from the latter to Wiley English, dated November 13, 1896, from English to J. B. Stetson of February 23, 1897, a tax deed from the state of California to J. C. Ruddock, dated March 6, 1905, the property having been sold for delinquent taxes for 1897 assessed to Wiley English, a deed from Ruddock to F. L. Caughey of an undivided one-half interest, dated November 10, 1906, a deed from Ruddock and Caughey to Terrence Rodgers of the date of April 9, 1912, and from Rodgers to plaintiff dated February ——, 1919, conveying the following: ''Beginning at the intersection of the west line of Dora street with the north line of Mill street (being the southeast corner of block IX–X of Gobbi's Addition to Ukiah City) and running thence north along the west line of Dora street one hundred (100) feet to the south line of land conveyed by William Proudfoot to E. W. King by deed dated June 17, 1889, and recorded in the office of the county recorder of said county in book 48 of Deeds, p. 176 (said property being now owned by the grantee herein), thence westerly along the south line of said King lands and a prolongation of said south line two hundred and eighty feet more or less to what would be the west line of Hortense street if the same were extended southerly in its present course, thence southerly along said west line of Hortense street (if extended) 100 feet more or less to the north line of Mill street, thence easterly along the north line of Mill street to the place of beginning.''

The foregoing clearly showed the record title in and to the whole of the disputed strip to be vested in plaintiff.

Appellant, however, objected to the introduction of said deed from Rodgers upon the ground "that no foundation has been laid and that he did not have any interest in the land at the date, having theretofore conveyed all his interest in it to Henry Owens on April 18, 1912." In support of his contention appellant thereafter offered said deed from Rodgers to Owens purporting to convey "the south one-half (S. ½) of Block Nine (9), Gobbi's Addition to the town of Ukiah City, according to the plat of said Addition on file with the county recorder of Mendocino County, California." Plaintiff objected to this deed upon the ground that it was impossible to determine from it the location of the boundary line between blocks 9 and 10 and hence the deed was void for uncertainty. The court finally adopted the view of plaintiff and sustained his objection. This ruling involves one of the important questions in the case. It was and is the claim of appellant that all the parties in interest from the time the whole tract belonged to William Proudfoot recognized block 9 as being 280 feet from west to east and thereby including the disputed strip, and block 10 as extending from Dora Street 200 feet west to the easterly line of Hortense Street if extended. In support of this position appellant refers to several circumstances among which is the description of block 9 in the said deed of William Proudfoot to E. W. King of June 17, 1889, in which said block 9 is described as extending from a point 200 feet westerly from Dora Street, a distance of 280 feet to Spring Street.

It is not an unreasonable inference that the dividing line between said blocks was generally so understood and recognized, but in said deed there is no reference whatever to any monument, deed, fact, or circumstance suggesting or furnishing any data by which such boundary line can be established. The deed is according "to the plat of said Gobbi's Addition," and there is nothing thereon to indicate the location of said line. [1] The rule is well established, as stated by this court in *Scott* v. *Woodworth*, 34 Cal. App. 400 [167 Pac. 543]: "To be valid on its face, a deed must contain such a description of the real property thereby intended to be conveyed as will enable the property to be readily located by reference to the description."

It was further declared therein that if the writing itself does not "furnish the means whereby the description may

be made sufficiently definite and certain readily to locate the property, then the instrument must be held void, since the imperfections of the description cannot be supplied through evidence extrinsic to the writing itself without running up against the positive mandate of the rule that a conveyance of real property must be in writing.'' As before indicated, if reference had been made in the deed from Rodgers to the description of block 9 as contained in said deed from Proudfoot, or to any other fact or circumstance by aid of which the line could be located upon the ground, a different situation would be presented. [2] If such reference had been made then we would be governed by the rule affirmed in *Donnelly* v. *Tregaskis,* 154 Cal. 261 [97 Pac. 421], quoting from *Caldwell* v. *Center,* 30 Cal. 540 [89 Am. Dec. 131], as follows: ''Although the parties to a deed may describe the property therein conveyed, by a reference therein to another deed or map which contains a description yet the deed and the instrument referred to when taken together, must be as certain in respect to the description, as a description contained in the deed itself.''

To the authorities cited in the Scott case, *supra,* we may add *Reed* v. *Lammel,* 28 Minn. 306 [9 N. W. 858], and *Cunningham* v. *Village of Willow River,* 68 Minn. 249 [71 N. W. 532], each involving a situation quite similar to that herein.

In support of his claim to the record title appellant also offered a deed from William Proudfoot to John Cunningham, dated December 5, 1919, purporting to convey by metes and bounds the southern half of the 80-foot strip included within the boundaries of said Hortense Street if extended to Mill Street. The court, though, properly excluded this deed upon the ground that the grantor had previously conveyed all his interest in the south half of blocks 9 and 10 to Wiley English.

As to the north half of the disputed strip, it is quite plain that the deed from King to W. I. Bailey dated June 21, 1890, offered by appellant, was properly excluded, since it described by metes and bounds and purported to convey block 9 as lying entirely west of said Hortense Street if extended. It therefore did not include the land in controversy. Indeed, without further specification of the instru-

ments offered by appellant, we conclude that the record title to the disputed strip was shown to be in respondent.

Appellant, however, attempted to prove title by prescription. He asked many questions along this line, but the trial court sustained objections to them. Then he made the following offer: "We offer to prove by defendant John Cunningham that he knows of his own personal knowledge that since 1912 Henry Owens was in actual and open notorious possession of the south half of block 9 holding and claiming the same as his own during all the time down to the time of his death, which was January 7, 1918, and during each and every year cultivated that tract of land including the land in controversy in this action and put it in grain. That during all of the time the tract was inclosed in a substantial inclosure, that as to the north half of block 9 and also including the strip contained in this action, the same was in the actual possession of John Gobbi, and prior to 1912 the same had been used by him as a home, upon which he had built a house and upon which he lived until the time of his death and that this tract of land was also inclosed in a substantial inclosure, that since that time the defendant acquired a deed from Henry Owens to the south half of 9 he has been in actual, open and notorious possession of the same claiming to hold the same as his own and during said time has cultivated said tract and with reference to the north half from the time he secured the deeds from the heirs of the Gobbi estate."

It is true that this offer was not complete, since it contained no allusion to the payment of taxes. As to that, however, evidence was subsequently offered and an objection was sustained upon the ground that it was immaterial. We are aware also that a blanket offer like that, standing alone, is not a sufficient basis for challenging the ruling of the court, but the statement came after objection to questions in relation to the possession of the property and claim of title had been sustained, and appellant desired to make clear the purpose of the offered evidence. The trial court excluded the testimony upon the ground that there was "no deed in evidence between Owens and Cunningham." [3] But if defendant had shown title in Owens it would have been a good defense to the action. "Title in a third party is a good defense, though defendant does not connect

himself with it, and particularly is this so when the plaintiff has not been in the possession of the lands within the period of the statute of limitations or at all.'' (*Cranmer* v. *Porter*, 41 Cal. 462; *Trenouth* v. *Gordon*, 63 Cal. 379; *Robrecht* v. *Reid*, 114 Cal. 356 [46 Pac. 101.) In the last of these the rule is stated as follows: ''It is true that in an action of ejectment, when the plaintiff relies upon a paper title, the defendant may show the true title with right of possession to be outstanding in a third person, without connecting himself with it, and may thus defeat the action.''

This is simply an illustration of the well-established doctrine that in ejectment the plaintiff must recover, if at all, on the strength of his own title and not upon the weakness or want of title in the defendant. (*Gage* v. *Downey*, 94 Cal. 241 [29 Pac. 635]; *Reay* v. *Butler*, 95 Cal. 206 [30 Pac. 208].)

[4] But the fact is that appellant offered in evidence a decree of distribution in the estate of Henry Owens, deceased, distributing to appellant and his wife ''the S½ of block 9 of Gobbi's Addition to the Town of Ukiah City,'' and in said decree it was ''further ordered, adjudged and decreed that any other property not now known or found be and the same is hereby distributed to John Cunningham and the said Nancy Cunningham share and share alike.'' This latter clause would, of course, include the title of Owens to any part of the disputed strip even if it was not embraced in the land specifically described in the decree of distribution. [5] After the trial court's attention was called to this decree of distribution and while appellant was being examined as a witness, the record shows the following:

''Mr. Wessels: 'I will ask you to state, Mr. Cunningham, if you know from your own knowledge whether Otis Redemeyer or Terrence Rodgers or Mr. Van Dusen or any of the predecessors of Mr. Redemeyer or his grantors had been in possession of the tract in dispute since the year 1912 or any part thereof.'

''Mr. Kasch: 'Object upon the ground it is incompetent, irrelevant and immaterial.'

''The Court: 'Not material unless he derived title from Owens in order to make the claim of adverse possession. You must show the continuity by proper conveyance to Mr. Cunningham.'

"Mr. Wessels: 'I will ask you to state whether or not there had been any other person in possession of the south half of block 9 or the south half of the tract in dispute other than Henry Owens, yourself and your cotenant Nancy Cunningham since the year 1912 down to the present time.'

"Mr. Kasch: 'Same objection, incompetent, irrelevant and immaterial.'

"The Court: 'Same ruling.' "

It may be added that appellant sought unsuccessfully to introduce similar evidence as to the north half of said strip. In this connection the following question was asked of Mr. Cunningham: "I will also ask you to state whether or not there has been anyone whatsoever in possession of the north half of block 9 and the half of the land in question since 1912 other than John Gobbi, his heirs and yourself and your cotenant?" The court sustained an objection to this question, and this, we think, was error. We can perceive of no reason why appellant was not entitled to show actual possession for the statutory period as one of the material elements of title by prescription. It is true that some of the excluded evidence was offered also for the purpose of showing an agreed division line between the two blocks, but, if improper for that purpose, it was at least admissible to support the claim of adverse possession.

[6] Appellant also attempted to introduce evidence tending to show that the 80-foot strip included in the extension of Hortense Street had been dedicated to the public for public use as a highway and that said strip had been used as a public street for a period of twenty-nine years. Appellant claims that "ejectment will not lie for an incorporeal hereditament; a public road or street is an incorporeal hereditament," citing *Wood* v. *Truckee Turnpike Co.*, 24 Cal. 474; *Mahon* v. *San Rafael* |T. R. Co., 49 Cal. 269; *Coburn* v. *Ames*, 52 Cal. 385 [28 Am. Rep. 634]; *Swift* v. *Goodrich*, 70 Cal. 103 [11 Pac. 561]; *Southern Pac. Co.* v. *Burr*, 86 Cal. 279 [24 Pac. 1032]; *City of Eureka* v. *Gates*, 120 Cal. 54 [52 Pac. 125]; 19 Corpus Juris, "Ejectment," p. 1034.

In the Wood case, *supra*, the plaintiff did not own the fee to the land in controversy, but he was claiming as the purchaser under a sheriff's sale of "all the right, title, interest, claim and property of the Truckee Turnpike Com-

pany in and to the Truckee Turnpike Road, a highway,'' etc. It was held that said turnpike company held a mere franchise and that it did not pass to the plaintiff by said sale and that "all that was offered for sale and all that the plaintiffs bought was the 'road.' " It was in view of these facts that the supreme court said: "The plaintiffs acquired nothing by the purchase of the 'road' to which the action of ejectment has any remedial relations. 'Road' is a legal term, strictly synonymous with the term 'way,' and in the complaint, and throughout all the title papers of the plaintiffs, their identity is fully recognized. A way is an easement and consists in the right of passing over another man's ground. It is an incorporeal hereditament, a servitude imposed upon corporeal property, and not a part of it. It gives no right to possess the land upon which it is imposed but a right merely to the party in whom the way is vested to enjoy the way." It was therefore held that ejectment would not lie to recover possession of the way.

In the Mahon case it was held that the action was proper, since the plaintiff owned the fee and brought the action to recover possession having been improperly precluded by defendant from entering upon the land except upon the payment of a toll, and then only for the purpose of passing over the same.

In *Coburn* v. *Ames,* 52 Cal. 385 [28 Am. Rep. 634], it is said: "In effect, the finding is that Ames & Templeton took the exclusive possession of the alleged highways, and used them for the storage of merchandise, thereby excluding the public from the use of them as public highways. Even though it be conceded that they were legally established as public highways, the defendants had no authority in law to appropriate them to their exclusive use and dominion to the exclusion of the public. In doing so they were trespassers, and in such cases it is well settled that the owner of the fee may maintain ejectment. He is entitled to the possession subject to the public easement," etc.

In *Swift* v. *Goodrich* the right to the use of water was involved, which the court declared to be an easement and held that ejectment would not lie.

In *Southern Pac. Co.* v. *Burr* the action related to a strip of land 400 feet in width granted by Congress to the Central Pacific Railroad Company to aid in construction of a rail-

road and telegraph line from the Missouri River to the Pacific Ocean, and the supreme court held that the grant necessarily involved ''a right of possession in the grantee, and is inconsistent with any adverse possession of any part of the land embraced within the grant,'' and it was determined that the plaintiff could recover in an action of ejectment against one who had entered into possession of a part of the land and claimed title in fee. While it was admitted that perhaps for a mere easement the action would not lie, yet ''wherever a right of entry exists, and the interest is tangible, so that possession can be delivered, an action of ejectment will lie.''

In the Eureka case the action was brought by the municipality to recover possession of land constituting a part of a street and it was held that ''if the owner of the fee has dedicated a street and alley to public use, and the dedication has been accepted by the city in which the street and alley are situated, such city may maintain ejectment to recover possession thereof as against the owner of the fee, though the city may claim only an easement in the street and alley for public use.''

The citation from Corpus Juris is to the effect that ''the general rule is that an action for ejectment cannot be maintained for an incorporeal hereditament.''

It is apparent that these authorities do not militate against the ruling of the trial court as to the offered evidence. It is clear that appellant was in no position to urge such defense. [7] In his answer he alleged that he was in possession of the disputed strip under a claim of right and that he and his predecessors in interest had been in such possession since 1912. Even in the cross-complaint, which he sought to file, after alleging the dedication of the strip 80 feet in width for a public highway, he averred in effect that by agreement of the owners of the fee the highway was reduced to a width of 40 feet and they had entered into the possession of the 20-foot strip on each side respectively. Assuming, therefore, that the strip in question is actually a part of the highway, defendant by his pleadings and also by the evidence showed himself to be a trespasser, and under the decisions, the owner of the fee could maintain ejectment against him. Appellant cannot blow hot and cold. He cannot justify his possession upon both

grounds, namely, that he had acquired a title by prescription, and also that the land was a part of the highway and hence not subject to an action by the owner of the record title. The two defenses are entirely inconsistent and irreconcilable. Of course, if there is a highway 80 feet in width extending through to Mill Street, both plaintiff and defendant are trespassers, and it is a matter which should receive the attention of the municipal authorities, but under the circumstances already detailed we think that question could not be settled in this proceeding.

We are of the opinion also that the court committed no error in excluding said cross-complaint. It showed both parties to be trespassers, and as long as appellant was occupying a part of the street he could hardly complain of respondent for interfering with his use of it. Moreover, if appellant can succeed in establishing his right to the possession of the disputed strip the court may in its judgment protect him against any interference with his use of it. (*Mills* v. *Fletcher*, 100 Cal. 142 [34 Pac. 637]; *Nelson* v. *O'Brien*, 139 Cal. 628 [73 Pac. 469].) The residue of the 80-foot strip is not involved in the proceeding, and any controversy concerning it should be litigated in another action, if necessary.

Although the record is voluminous and the discussion by counsel has taken a wide range and is characterized by much industry and learning, we think the material issues relate to the question of title, either of record or by prescription, and that the court committed error in the respect already indicated.

The judgment is reversed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 18, 1923, and the following opinion then rendered thereon:

BURNETT, J.—In his petition for rehearing respondent contends that the ruling of the court below in rejecting the offered evidence as to the payment of taxes was without prejudice, for the reason that it did not show that the payment was made for five consecutive years. No such objec-

tion was made in the trial court and the ruling was based distinctly upon the ground that it was not material. When the offer was made of a copy of the official record respondent objected upon the ground that "it's immaterial who paid the taxes." Then counsel for appellant stated: "We offer in evidence a statement prepared by Lee Cunningham, the tax collector of Mendocino County, showing who paid the taxes so far as disclosed by the records in that office." The transcript then shows the following:

"The Court: 'Objection sustained.'

"Mr. Wessels: 'We offer it in evidence for the purpose of'—

"Mr. Kasch: 'Now with the witness Cunningham, it can't be material. I submit the motion to strike out the testimony as he has not connected it up.'

"The Court: 'If that was out the other document also must go B and C.'

"Mr. Kasch: 'I intended to follow with a motion to strike out those in view of that strip.'

"The Court: 'There is very little materiality in it, the motion will be granted.'"

As to the record offered it was manifestly not complete, and of itself it was not sufficient to prove said payment for the statutory period, but we must assume that appellant intended to follow it with other evidence that would supply the deficiency. Under the ruling of the court, however, it would be idle for him to present any further proof since the court had already decided that it was immaterial. [8] As aptly stated by appellant, "when the trial court at the instance and pursuant to the objection of respondent, erroneously excluded proof of one of the elements constituting title of appellant by adverse possession, such error alone constitutes ground for reversal and thereafter it was not incumbent upon the appellant to go through the useless and idle procedure of offering evidence of the remainder of the elements constituting his title by adverse possession."

[9] Moreover, it is the claim of appellant that such evidence was offered "for the purpose of showing *all* the lands situated in Gobbi's Addition to the Town of Ukiah City, bounded on the North by Jones Street, on the East by Dora Street, on the South by Mill Street and on the West by Spring Street that had been, *in fact*, assessed, and

for the purpose of showing *all* the lands situated therein that had not been, *in fact* assessed, and for the purpose of showing that all taxes levied or assessed thereon had been paid, as so far as disclosed by said records, by whom such taxes were paid.'' It is the contention of appellant that this evidence would have shown that the land in controversy was not assessed at all, it being treated by the assessors as a part of Hortense Street. We cannot say that it would not be material for that purpose. Of course, if the property was not assessed, the element of taxes would be eliminated. And since the later decisions of the supreme court (*McGrath* v. *Wallace,* 85 Cal. 622 [24 Pac. 793], *Baldwin* v. *Temple,* 101 Cal. 396 [35 Pac. 1008]), overruling *Oneto* v. *Restano,* 78 Cal. 374 [20 Pac. 743], hold that the burden of proof is upon the claimant of title by adverse possession to prove that no taxes have been assessed, if such be the fact, appellant should have been allowed to show it.

It is true that appellant did not state specifically in the trial court that the evidence was offered for that purpose, but he was not permitted to make a full statement, being interrupted, as we have seen, in the midst of his offer by counsel for respondent. We must assume that appellant was not only acting in good faith in the trial court but that he is sincere in his declaration in this court that he could have shown the facts as claimed by him, if he had been given an opportunity to do so. Of course, we cannot say that he may not fail, but we think the interests of justice demand that he be allowed to make the attempt to establish his claim.

It may be conceded that his various positions were somewhat inconsistent but it is not claimed, nor could it be, that he was put to an election.

As against plaintiff's claim of the *exclusive* right to the possession of the tract in dispute defendant would be permitted to defeat the action on the ground that he had acquired title by prescription, although such claim of title would be of no avail against the municipality or the public.

Another reason why respondent should not prevail herein is that the consideration which he now urges for a rehearing was not presented in the original argument before this court. In his brief the following is all that he said upon the subject: ''Under point 3 of issue 6, appellant argues that he

acquired title by adverse possession, but his point is met by the words of the trial court at page 175: 'Not material unless he [Cunningham] derived title from Owens in order to make the claim of adverse possession. You must show the continuity by proper conveyance to Mr. Cunningham.' Even if we consider every offer of defendant as actually in evidence he has failed to show continuity of possession by himself and his predecessors in interest *of the lands described in the complaint* for the necesssary period of five years. And if the disputed tract was or is a part of Hortense Street, surely counsel will not contend that title to it can be acquired by adverse possession." The rule is to ignore points made for the first time on petition for rehearing. It is true that this is not an inflexible rule, and in the interests of justice the appellate court may disregard it, but in view of the strenuous objection made by respondent to every effort of appellant in the trial court to prove the elements of adverse possession it would not be unfair to apply the rule herein.

At any rate we think the question should be thoroughly investigated by the trial court and the petition for rehearing is denied.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 14, 1923.